# CRUZ *v.* NEW YORK

No. 85–5939.   Argued December 1, 1986—Decided April 21, 1987

SCALIA, J., delivered the opinion of the Court, in which BRENNAN, MAR-
SHALL, BLACKMUN, and STEVENS, JJ., joined. WHITE, J., filed a dissent-
ing opinion, in which REHNQUIST, C. J., and POWELL and O'CONNOR, JJ.,
joined, *post*, p. 194.

*Robert S. Dean* argued the cause for petitioner. With him
on the briefs was *Philip L. Weinstein.*

*Peter D. Coddington* argued the cause for respondent.
With him on the brief was *Mario Merola.*

*Robert H. Klonoff* argued the cause for the United States
as *amicus curiae* urging affirmance. With him on the brief
were *Solicitor General Fried, Assistant Attorney General
Trott,* and *Deputy Solicitor General Bryson.*

JUSTICE SCALIA delivered the opinion of the Court.

In *Bruton* v. *United States,* 391 U. S. 123 (1968), we held
that a defendant is deprived of his rights under the Con-
frontation Clause when his codefendant's incriminating con-

fession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant. In *Parker* v. *Randolph*, 442 U. S. 62 (1979), we considered, but were unable authoritatively to resolve, the question whether *Bruton* applies where the defendant's own confession, corroborating that of his codefendant, is introduced against him. We resolve that question today.

## I

Jerry Cruz was murdered on March 15, 1982. That is not the murder for which petitioner was tried and convicted, but the investigation of the one led to the solving of the other. On the day following Jerry Cruz's murder, and on several later occasions, the police talked to Jerry's brother Norberto about the killing. On April 27, Norberto for the first time informed the police of a November 29, 1981, visit by petitioner Eulogio Cruz and his brother Benjamin to the apartment Norberto shared with Jerry. (Eulogio and Benjamin Cruz were longtime friends of Norberto and Jerry Cruz, but the two sets of brothers were not related.) Norberto said that at the time of the visit Eulogio was nervous and was wearing a bloodstained bandage around his arm. According to Norberto, Eulogio confided that he and Benjamin had gone to a Bronx gas station the night before, intending to rob it; that Eulogio and the attendant had struggled; and that, after the attendant had grabbed a gun from behind a counter and shot Eulogio in the arm, Benjamin had killed him. Norberto claimed that Benjamin gave a similar account of the incident.

On May 3, 1982, the police questioned Benjamin about the murder of Jerry Cruz. He strongly denied any connection with that homicide and became frustrated when the police seemed unwilling to believe him. Suddenly, to prove that he would tell the truth about killing someone if he were guilty, Benjamin spontaneously confessed to the murder of the gas station attendant. Later that evening, he gave a detailed videotaped confession to an Assistant District Attorney, in

which he admitted that he, Eulogio, Jerry Cruz, and a fourth man had robbed the gas station, and that he had killed the attendant after the attendant shot Eulogio. Benjamin and Eulogio were indicted for felony murder of the station attendant.

The brothers were tried jointly, over Eulogio's objection. Likewise over Eulogio's objection, the trial judge allowed the prosecutor to introduce Benjamin's videotaped confession, warning the jury that the confession was not to be used against Eulogio. The government also called Norberto, who testified about his November 29 conversation with Eulogio and Benjamin. Finally, the government introduced police testimony, forensic evidence, and photographs of the scene of the murder, all of which corroborated Benjamin's videotaped confession and the statements recounted by Norberto. At the trial's end, however, Norberto's testimony stood as the only evidence admissible against Eulogio that directly linked him to the crime. Eulogio's attorney tried to persuade the jury that Norberto had suspected Eulogio and Benjamin of killing his brother Jerry and had fabricated his testimony to gain revenge. Unconvinced, the jury convicted both defendants.

The New York Court of Appeals affirmed Eulogio's conviction, 66 N. Y. 2d 61, 485 N. E. 2d 221 (1985), adopting the reasoning of the plurality opinion in *Parker* that *Bruton* did not require the codefendant's confession to be excluded because Eulogio had himself confessed and his confession "interlocked" with Benjamin's. We granted certiorari. 476 U. S. 1168 (1986).

## II

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." We have held that that guarantee, extended against the States by the Fourteenth Amendment, includes the right to cross-examine witnesses. See *Pointer* v. *Texas*, 380 U. S. 400, 404 (1965). Where two or

more defendants are tried jointly, therefore, the pretrial confession of one of them that implicates the others is not admissible against the others unless the confessing defendant waives his Fifth Amendment rights so as to permit cross-examination.

Ordinarily, a witness is considered to be a witness "against" a defendant for purposes of the Confrontation Clause only if his testimony is part of the body of evidence that the jury may consider in assessing his guilt. Therefore, a witness whose testimony is introduced in a joint trial with the limiting instruction that it be used only to assess the guilt of one of the defendants will not be considered to be a witness "against" the other defendants. In *Bruton*, however, we held that this principle will not be applied to validate, under the Confrontation Clause, introduction of a nontestifying codefendant's confession implicating the defendant, with instructions that the jury should disregard the confession insofar as its consideration of the defendant's guilt is concerned. We said:

> "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect . . . ." 391 U. S., at 135–136 (citations omitted).

We had occasion to revisit this issue in *Parker*, which resembled *Bruton* in all major respects save one: Each of the jointly tried defendants had himself confessed, his own confession was introduced against him, and his confession recited essentially the same facts as those of his nontestifying

codefendants. The plurality of four Justices found no Sixth Amendment violation. It understood *Bruton* to hold that the Confrontation Clause is violated only when introduction of a codefendant's confession is "devastating" to the defendant's case. When the defendant has himself confessed, the plurality reasoned, "[his] case has already been devastated," 442 U. S., at 75, n. 7, so that the codefendant's confession "will seldom, if ever, be of the 'devastating' character referred to in *Bruton*," and impeaching that confession on cross-examination "would likely yield small advantage," *id.*, at 73. Thus, the plurality would have held *Bruton* inapplicable to cases involving interlocking confessions. The four remaining Justices participating in the case disagreed, subscribing to the view expressed by JUSTICE BLACKMUN that introduction of the defendant's own interlocking confession might, in some cases, render the violation of the Confrontation Clause harmless, but could not cause introduction of the nontestifying codefendant's confession not to constitute a violation. *Id.*, at 77–80 (BLACKMUN, J., concurring in part and concurring in judgment). (JUSTICE BLACKMUN alone went on to find that the interlocking confession did make the error harmless in the case before the Court, thereby producing a majority for affirmance of the convictions. *Id.*, at 80–81.) We face again today the issue on which the Court was evenly divided in *Parker*.

We adopt the approach espoused by JUSTICE BLACKMUN. While "devastating" practical effect was one of the factors that *Bruton* considered in assessing whether the Confrontation Clause might sometimes require departure from the general rule that jury instructions suffice to exclude improper testimony, 391 U. S., at 136, it did not suggest that the existence of such an effect should be assessed on a case-by-case basis. Rather, that factor was one of the justifications for excepting from the general rule the entire category of codefendant confessions that implicate the defendant in the crime. It is impossible to imagine why there should be

excluded from that category, as generally not "devastating," codefendant confessions that "interlock" with the defendant's own confession. "[T]he infinite variability of inculpatory statements (whether made by defendants or codefendants), and of their likely effect on juries, makes [the assumption that an interlocking confession will preclude devastation] untenable." *Parker*, 442 U. S., at 84 (STEVENS, J., dissenting). In this case, for example, the precise content and even the existence of petitioner's own confession were open to question, since they depended upon acceptance of Norberto's testimony, whereas the incriminating confession of codefendant Benjamin was on videotape.

In fact, it seems to us that "interlocking" bears a positively inverse relationship to devastation. A codefendant's confession will be relatively harmless if the incriminating story it tells is different from that which the defendant himself is alleged to have told, but enormously damaging if it confirms, in all essential respects, the defendant's alleged confession. It might be otherwise if the defendant were *standing by* his confession, in which case it could be said that the codefendant's confession does no more than support the defendant's very own case. But in the real world of criminal litigation, the defendant is seeking to *avoid* his confession—on the ground that it was not accurately reported, or that it was not really true when made. In the present case, for example, petitioner sought to establish that Norberto had a motive for falsely reporting a confession that never in fact occurred. In such circumstances a codefendant's confession that corroborates the defendant's confession significantly harms the defendant's case, whereas one that is positively incompatible gives credence to the defendant's assertion that his own alleged confession was nonexistent or false. Quite obviously, what the "interlocking" nature of the codefendant's confession pertains to is not its *harmfulness* but rather its *reliability:* If it confirms essentially the same facts as the defendant's own confession it is more likely to be true. Its reliability,

however, may be relevant to whether the confession should (despite the lack of opportunity for cross-examination) be *admitted as evidence* against the defendant, see *Lee* v. *Illinois*, 476 U. S. 530 (1986), but cannot conceivably be relevant to whether, assuming it cannot be admitted, the jury is likely to obey the instruction to disregard it, or the jury's failure to obey is likely to be inconsequential. The law cannot command respect if such an inexplicable exception to a supposed constitutional imperative is adopted. Having decided *Bruton*, we must face the honest consequences of what it holds.

The dissent makes no effort to respond to these points, urging instead a rejection of our "remorseless logic" in favor of "common sense and judgment." See *post*, at 197. But those qualities, even in their most remorseless form, are not separable. It seems to us illogical, and therefore contrary to common sense and good judgment, to believe that codefendant confessions are less likely to be taken into account by the jury the more they are corroborated by the defendant's own admissions; or that they are less likely to be harmful when they confirm the validity of the defendant's alleged confession. Far from carrying *Bruton* "to the outer limits of its logic," *ibid.*, our holding here does no more than reaffirm its central proposition. This case is indistinguishable from *Bruton* with respect to those factors the Court has deemed relevant in this area: the likelihood that the instruction will be disregarded, *Bruton*, 391 U. S., at 135; the probability that such disregard will have a devastating effect, *id.*, at 136; and the determinability of these facts in advance of trial, *Richardson* v. *Marsh*, *post*, at 208.

We hold that, where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, see *Lee* v. *Illinois*, *supra*, the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him. Of course, the defendant's confession may be

considered at trial in assessing whether his codefendant's statements are supported by sufficient "indicia of reliability" to be directly admissible against him (assuming the "unavailability" of the codefendant) despite the lack of opportunity for cross-examination, see *Lee, supra,* at 543–544; *Bruton, supra,* at 128, n. 3, and may be considered on appeal in assessing whether any Confrontation Clause violation was harmless, see *Harrington* v. *California,* 395 U. S. 250 (1969).

Because the Court of Appeals analyzed petitioner's Confrontation Clause claim under an approach we have now rejected, we reverse and remand for further proceedings not inconsistent with this opinion.

*So ordered.*

JUSTICE WHITE, with whom THE CHIEF JUSTICE, JUSTICE POWELL, and JUSTICE O'CONNOR join, dissenting.

*Bruton* v. *United States,* 391 U. S. 123 (1968), involved a joint trial and the admission of a codefendant's confession with instructions to the jury not to consider it against the defendant.[1]   Concededly, if the jury had followed its instructions there would have been no error, constitutional or otherwise.   But the Court held that in "some contexts"—and the *Bruton* case fell in that category—the chance was "so great" that the jury would not follow its instructions to consider the codefendant's confession only against him, and the failure to follow such instructions would be so "devastating"

---

[1] The crime with which Bruton and his codefendant Evans were charged was the robbery of postal funds from a jewelry store that operated a contract branch for the United States Post Office Department.   *Evans* v. *United States,* 375 F. 2d 355, 357 (CA8 1967).   Evans was readily identified by the store's owner and another employee, who knew him as a frequent visitor to the store, but the owner could not identify Bruton as Evan's accomplice.   *Ibid.*   The employee did identify Bruton at trial, but admitted that she had failed to identify him at a first lineup of three persons, and had identified him only at a second lineup, at a time when she suspected that he had been part of the previous lineup.   App. in *Bruton* v. *United States,* O. T. 1967, No. 705, pp. 70–73.

to the defendant's case, that it would be constitutional error to admit the confession even against the codefendant. *Id.*, at 135–136. The introduction of the codefendant's confession "posed a substantial threat to petitioner's right to confront the witnesses against him," a threat the Court said it could not ignore. *Id.*, at 137.

In *Bruton*, the defendant himself had not confessed. Here, it is otherwise: defendant Cruz had confessed and his confession was properly before the jury. Yet the Court's holding is that the codefendant's confession was inadmissible even if it completely "interlocked" with that of Cruz himself, that is, was substantially the same as and consistent with Cruz's confession with respect to all elements of the crime and did not threaten to incriminate Cruz any more than his own confession.

This makes little sense to me. "[T]he defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. Though itself an out-of-court statement, it is admitted as reliable evidence because it is an admission of guilt by the defendant and constitutes direct evidence of the facts to which it relates. Even the testimony of an eyewitness may be less reliable than the defendant's own confession. An observer may not correctly perceive, understand, or remember the acts of another, but the admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct." *Id.*, at 139–140 (WHITE, J., dissenting). Confessions of defendants have profound impact on juries, so much that we held in *Jackson* v. *Denno*, 378 U. S. 368 (1964), that there is justifiable doubt that juries will disregard them even if told to do so. But a codefendant's out-of-court statements implicating the defendant are not only hearsay but also have traditionally been viewed with special suspicion. *Bruton, supra,* at 136; *Holmgren* v.

*United States*, 217 U. S. 509, 523–524 (1910); *Crawford* v. *United States*, 212 U. S. 183, 204 (1909). And the jury may be so informed. *Bruton* held that where the defendant has not himself confessed, there is too great a chance that the jury would rely on the codefendant's confession. But here, Cruz had admitted the crime and this fact was before the jury. I disagree with the Court's proposition that in every interlocking confession case, the jury, with the defendant's confession properly before it, would be tempted to disobey its instructions and fail to understand that presumptively unreliable evidence must not be used against the defendant. Nor is it remotely possible that in every case the admission of an interlocking confession by a codefendant will have the devastating effect referred to in *Bruton*.[2]

The Court finds it "impossible to imagine" why the defendant's interlocking confession could ever make the *Bruton* rule inapplicable; any such conclusion would be "illogical." *Ante*, at 191, 193. But many Court of Appeals Judges—as many as embrace the Court's harmless-error rule—are not so unimaginative; they see nothing illogical, in interlocking confession cases, in adhering to the traditional presumption that juries follow their instructions.[3] Of course, the decision here is not

---

[2] The Court is of the view that " 'interlocking' bears a positively inverse relationship to devastation." *Ante*, at 192. In so reasoning, the Court gives no weight whatsoever to the devastating effect that the defendant's own confession is likely to have upon his case. The majority's excuse for ignoring this consideration apparently is that the damaging effect of the defendant's confession may vary somewhat from case to case. *Ibid.* But the *Bruton* rule is prophylactic in nature, and, in view of the fact that it imposes significant burdens on the prosecution, see *Richardson* v. *Marsh*, *post*, at 209–210, the rule should be confined to those cases where the jury's ignoring of limiting instructions is most likely to change the verdict, which is to say, those cases where there is the greatest risk that jury misconduct will lead to the conviction of an innocent defendant. It is self-evident that, as a class, cases where the defendant has not confessed fit that description far better than cases where the defendant has confessed.

[3] As I read the cases, the Second, Seventh, and Eleventh Circuits follow the course the Court rejects. *United States ex rel. Catanzaro* v. *Man-*

a matter of imagination or logic, but one of common sense and judgment in interpreting the Constitution. *Bruton* disallowed the codefendant's confession into evidence, even with an instruction to disregard it as evidence against Bruton, because it posed a "substantial threat" to his Confrontation Clause rights. It does not defy logic to find that in other circumstances, such as where the defendant's own confession interlocks with his codefendant's, the threat is not of such magnitude. Even where remorseless logic may seem to justify the extension of what otherwise might be a sound constitutional rule, common sense should prevail. Otherwise, especially in applying prophylactic rules, we may trivialize the principles of prior cases by applying them to situations that in general do not really pose the dangers that the rules were intended to obviate.

The Court states that "[W]e must face the honest consequences" of the *Bruton* decision. *Ante*, at 193. But *Richardson* v. *Marsh, post,* p. 200, decided today, recognizes that *Bruton* cannot be followed to the outer limits of its logic without serious disruption of the State's ability to conduct joint trials. In *Richardson*, the Court of Appeals held inadmissible a codefendant's confession even though it had been redacted to eliminate any references to the defendant, the

---

*cusi,* 404 F. 2d 296, 300 (CA2 1968); *United States* v. *Paternina-Vergara,* 749 F. 2d 993, 998–999 (CA2 1984); *United States* v. *Spinks,* 470 F. 2d 64 (CA7 1972); *United States* v. *Kroesser,* 731 F. 2d 1509 (CA11 1984). The Fourth and Fifth Circuits lean in that direction, *United States* v. *Smith,* 792 F. 2d 441, 443 (CA4 1986); *Mack* v. *Maggio,* 538 F. 2d 1129 (CA5 1976); *United States* v. *Miller,* 666 F. 2d 991, 997–999 (CA5 1982); and the Tenth Circuit's view is that any difference between the two views is only a legal nicety, *Metropolis* v. *Turner,* 437 F. 2d 207 (1971). The Third, Sixth, Eighth, and Ninth Circuits take the harmless-error route. *United States* v. *DiGilio,* 538 F. 2d 972 (CA3 1976); *Hodges* v. *Rose,* 570 F. 2d 643, 647 (CA6 1978); *United States* v. *Parker,* 622 F. 2d 298 (CA8 1980); *United States* v. *Espericueta-Reyes,* 631 F. 2d 616, 624, n. 11 (CA9 1980). The Court of Appeals Judges who have addressed the issue are approximately equally divided as to whether to apply *Bruton* in interlocking confession cases.

fear being that the jury, if it disobeyed its instructions, could have drawn unfavorable inferences from the challenged confession when considered together with other evidence. *Marsh v. Richardson*, 781 F. 2d 1201 (CA6 1986). We reversed the Court of Appeals despite this possibility, thus rejecting the *Bruton* claim, *post*, at 211, as we should do in this case.

That the error the Court finds may be harmless and the conviction saved will not comfort prosecutors and judges. I doubt that the former will seek joint trials in interlocking confession cases, and if that occurs, the judge is not likely to commit error by admitting the codefendant's confession. Of course, defendants may be tried separately and *Bruton* problems avoided. But joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial," *Bruton*, 391 U. S., at 134, to say nothing of the possibility of inconsistent verdicts and the effect of severance on already overburdened state and federal court systems. See also *Richardson* v. *Marsh*, *post*, at 209–210.

I thus adhere to the views expressed by the plurality in *Parker* v. *Randolph*, 442 U. S. 62 (1979). There was no constitutional error here that *Bruton* sought to avoid, and no occasion to inquire into harmless error. In announcing its prophylactic rule, *Bruton* did not address the situation where the defendant himself had confessed, and I would not extend its holding to cases where the jury has heard the defendant's own confession.

*Lee* v. *Illinois*, 476 U. S. 530 (1986), and *Ohio* v. *Roberts*, 448 U. S. 56 (1980), suggest that a codefendant's interlocking confession will often be admissible against the defendant, in which event there would not be the Confrontation Clause issue *Bruton* identified.[4] Here, the codefendant's confession

---

[4] As JUSTICE BLACKMUN commented in dissent in *Lee:*

"In *Bruton* v. *United States*, 391 U. S. 123 (1968), the inadmissibility of the codefendant's out-of-court statements against the defendant was not contested . . . . The *Bruton* rule thus necessarily applies only to situa-

carries numerous indicia of reliability; and I gather that the Court's disposition does not deny the state courts, on remand, the opportunity to deal with the admissibility of that confession against Cruz.

---

tions in which the out-of-court statements are constitutionally inadmissible against the defendant." 476 U. S., at 552, n. 5.