(June 13, 1989)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MALAKI SHAKUR LATINE, Also Known as GREGORY LATINE, Appellant.—Judgment, Supreme Court, New York County (Burton Roberts, J.), rendered October 1, 1981, which convicted defendant after jury trial of attempted murder in the first degree, assault in the first degree, and criminal possession of stolen property in the third degree, and sentenced him to 25 years to life and concurrent lesser terms, unanimously affirmed.

The trial court consolidated defendant's trial with that of his codefendant, Jose Saldana, and denied defendant's motion for a severance. The defendant argued that the admission into evidence of a statement made by Saldana to a third-party witness, which directly implicated the defendant in the crime, would violate defendant's constitutional right to confrontation. Relying on the law applicable at that time *(see, Parker v Randolph,* 442 US 62), the trial court denied defendant's motion, finding that defendant had made equally inculpatory admissions which "interlocked" with Saldana's statement, and therefore were an exception to the *Bruton (Bruton v United States,* 391 US 123) rule.

On this appeal, an analysis of this issue is required within the context of the recent ruling in *People v Cruz* (66 NY2d 61, *revd* 481 US 186, *on remand* 70 NY2d 733), which holds that the admission, at a joint trial, of a nontestifying codefendant's confession implicating the defendant is a violation of the defendant's constitutional right to confront the witnesses against him irrespective of whether the confessions are interlocking or not. While the procedure at the instant trial violated that rule, a "harmless error" analysis is applicable.

Under such analysis, the conviction in this case should be affirmed because there was overwhelming evidence of defendant's guilt independent of Saldana's admission.

The conviction arises from an incident in which defendant shot Police Sergeant Joseph Pellicano in the face with a sawed-off shotgun from the window of a stolen car on a Harlem street. Earlier that evening, defendant, Saldana, and two other men were present in the car when it became involved in a traffic accident with a gypsy taxicab. An argument ensued, and Saldana fired shots at the cars of both the cab driver and the manager of the cab service, who had arrived at the scene in the interim. The defendant and his cohorts then fled and went to the home of Dolores DuBois and Ronnell Brown. Brown testified at the trial that when they arrived one of the men other than defendant was carrying a short-barrelled .357 magnum and told Brown that they had all been in an automobile accident and that cab drivers had followed them. Saldana, who had a gun in his waistband, said that he had shot at the cab drivers. Defendant was carrying a shopping bag containing a sawed-off shotgun, a pistol, and a gun-cleaning kit. Ms. DuBois then asked the men to leave the apartment. The men left and drove off in the stolen car.

Police Officers Monteleone and Pellicano, on patrol in the area, received a radio run describing the shooting and the car involved. At 4:40 a.m., they spotted the car on 145th Street near Eighth Avenue and pulled it over. When the officers approached, defendant fired the shotgun, hitting Pellicano in the face. After the police officers returned the fire, Monteleone drove the seriously injured Pellicano to the hospital and radioed for assistance.

The defendant and his companions fled on foot. When other police officers arrived at the scene, one of them followed a trail of blood and found one of defendant's companions, Shakur, who had been shot in the foot, a few blocks away, and arrested him. Other police officers recovered evidence from the car, including a shotgun which had recently been fired, handguns, spent and live shotgun shells, a gun-cleaning kit, and other items. At trial, Brown identified the guns and cleaning kit as those which defendant and the others showed him earlier in the evening. The fingerprints of defendant and Saldana were found in the car.

The defendant, Saldana, and their remaining cohort, Thomas, fled to a nearby building where both Thomas' sister and Shakur's friend Loretta Martin maintained apartments. Loretta's sister Patricia was staying with her that night.

Defendant told Loretta Martin that he had shot a police officer because the officer had been about to shoot Shakur. Later, defendant told Loretta and Patricia Martin and three other women about the night's incident's specifically confessing again that a police officer had put a gun to Shakur's head and that defendant shot the police officer with his shotgun to save Shakur. The two Martin sisters testified at the trial as to these statements.

Two or three days later, the defendant met with Brown and told him that he had shot Sergeant Pellicano with a shotgun loaded with birdshot and commented that the sergeant would have been killed had defendant used buckshot.

Defendant later hid out in the Queens home of Barbara Majors for 2 or 3 weeks. He instructed her that if she were questioned by the police, she was to say that Saldana had admitted shooting the officer.

The day after the shooting, Saldana met with Brown and told him that defendant had refused to shoot at the police, so Saldana aimed his pistol at the defendant and ordered him to shoot the police officer, which defendant then did.

Defendant argues that the introduction into evidence of the statement made by Saldana to Brown incriminating the defendant violated his constitutional right of confrontation. Defendant relies on the recent United States Supreme Court decision in *Cruz v New York* (481 US 186, *supra*), which holds that where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him.

However, in cases arising since the decision in *Cruz (supra)*, the Court of Appeals has made clear that harmless error analysis can apply even if this rule of constitutional magnitude is violated. *(E.g., People v Hamlin,* 71 NY2d 750; *People v Faust,* 73 NY2d 828.)* The court has emphasized, however, that "[c]onstitutional error may be harmless only if it is harmless beyond a reasonable doubt, that is, there is no reasonable possibility that the erroneously admitted evidence contributed to the conviction * * *. In making that determination, the court considers two discrete factors: (1) the quantum and nature of the evidence against the defendant if the error is excised and (2) the causal effect the error may nevertheless have had on the jury" *(People v Hamlin, supra,* at 756).

Applying these factors to the case at hand, it is clear that defendant's conviction should be affirmed, notwithstanding the erroneous admission of the statement made by Saldana to Brown. First, there is overwhelming evidence of defendant's guilt, even after Saldana's statement is excised. Three different witnesses, Ronnell Brown, Loretta Martin, and Patricia Martin, all described the defendant's own repeated admissions, which were more inculpatory than Saldana's statement. There was also substantial other independent evidence of defendant's guilt, such as Brown's testimony that following the incident with the taxicab but before the police shooting, defendant appeared at the DuBois apartment carrying a sawed-off shotgun, pistol, and gun-cleaning kit similar to those found in and near the car. Defendant's fingerprint was found on the car. Moreover, defendant fled and hid out at Barbara Majors' house for 2 or 3 weeks and told her that if she was questioned by the police she was to say that Saldana had done the shooting.

It is clear that the causal effect of Saldana's admission on the jury was slight in light of all the other overwhelming evidence, and there is no chance that the jury would have acquitted defendant but for Saldana's statement. In fact, Saldana's admission that he pointed a gun at the defendant and forced him to commit the crime is far less damaging than defendant's own admissions, and, if anything, would have caused the jurors to question the defendant's guilt, not confirm it.

Accordingly, the defendant's conviction should be affirmed. Concur—Murphy, P. J., Sullivan, Ross, Kassal and Ellerin, JJ.