**Malaki Shakur LATINE, a/k/a Gregory Latine, Appellee,**

v.

**Louis F. MANN, Superintendent, Shawangunk Correctional Facility, Appellant.**

**No. 972, Docket 93–2609.**

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1994.

Decided June 13, 1994.

Ira Mickenberg, Office of Appellate Defender, New York City, for petitioner-appellee.

Mark Frazier Scholl, Asst. Dist. Atty. (Robert M. Morgenthau, Dist. Atty., David J. Mudd, Asst. Dist. Atty., New York City, on the brief), for respondent-appellant.

Before: WALKER and JACOBS, Circuit Judges, and DALY, District Judge.*

DALY, District Judge.

Respondent-appellant Louis F. Mann appeals on behalf of the State of New York from a final judgment of the United States District Court for the Southern District of New York (Lawrence M. McKenna, *Judge*) granting petitioner-appellee Gregory Latine's petition for a writ of habeas corpus, 830 F.Supp. 774. For the reasons stated below, we vacate the judgment of the district court and remand with directions to dismiss the writ.

## BACKGROUND

The evidence introduced at the petitioner's trial revealed the following facts. The petitioner, José Saldana, Jamal Thomas and Arkil Shakur were driving in a stolen Chevrolet Malibu in Brooklyn in the early morning hours of July 3, 1979. Some time between 2:00 and 3:00 a.m. they were involved in an accident with a gypsy taxicab driven by Locksley Green. Green radioed his company for assistance and then asked Thomas, who was driving the Malibu, for his license and registration, which he refused to produce. Green's manager, Horace Neufville, arrived on the scene and when Thomas again refused to produce any documentation, Neufville

---

* Honorable T.F. Gilroy Daly, of the United States District Court for the District of Connecticut, sitting by designation.

walked back toward his car to radio his company to have them call the police. The four men then fled in the Malibu, and Green and Neufville pursued them in separate cars. At one point during the chase Saldana jumped from the Malibu and fired a gun at Green's taxi, hitting the front bumper and driver's side door and window. Saldana fired three more shots at Neufville's taxi, also hitting the driver's side door. Both Green and Neufville gave up the pursuit, and the petitioner and his three companions drove to the apartment of Dolores DuBois and Donnell Brown and told them what happened. Brown testified at the petitioner's trial that on their arrival the petitioner carried a shopping bag containing a sawed-off shotgun, a .45 caliber pistol and a gun cleaning kit, and Saldana carried a .357 caliber revolver in his waistband. While there the petitioner gave Thomas the .45 caliber revolver. DuBois, upset by the presence of the guns in her apartment, ordered the men to leave, and they departed in the Malibu.

Officer Joseph Monteleone and Sergeant Patrick Pellicano received a radio report describing the accident and shooting, and at approximately 4:45 a.m. they spotted the Malibu and called for backup assistance. They then followed the Malibu until it stopped. Monteleone later testified that as the two officers approached the car with their guns drawn, one man dropped down in the back seat and the petitioner "sprang up" from the back seat and fired the sawed-off shotgun. Monteleone fired six shots into the Malibu and, upon returning to the patrol car to reload, discovered that Pellicano had been shot in the face. Monteleone then helped Pellicano into the patrol car and drove him to the hospital.

Several other officers arrived at the scene in response to the two officers' call for assistance, and discovered the Malibu abandoned. The Malibu's rear window and rear vent and side windows on the passenger side all were shattered. The officers found two discharged twenty-gauge shotgun shells, one live twenty-gauge shotgun shell, a plastic bag containing ammunition, a gun cleaning kit and a pair of handcuffs on the back seat of the Malibu and a fully-loaded .45 caliber revolver on the front seat. They found a .357 caliber revolver with three discharged shells next to the left front wheel and a recently-fired twenty-gauge shotgun approximately twenty feet from the front of the car. They also found Saldana's and a third man's fingerprints in the interior and on the exterior of the car and the petitioner's fingerprint on the car's roof.

While the police were conducting their investigation the petitioner went to the apartment of Loretta Martin, who lived with Shakur. Loretta's sister, Patricia, was staying at the apartment that night. The petitioner told Patricia that Shakur had been shot twice in the leg, that he was hiding in an abandoned building, and that she should bring him a pair of pants. The petitioner also told Patricia that he shot a police officer because the officer was about to shoot Shakur. Later the petitioner told the Martin sisters and three other women of the confrontation with the taxi drivers and the shootings, saying that one of the officers was about to shoot Shakur so he shot the officer. The petitioner also told them that the officer fired back and wounded Shakur.

Later that same day Saldana described the incident to Brown, saying that the petitioner initially refused to shoot the police officer, so Saldana aimed his pistol at the petitioner and told him to "open fire." [1] At that point the

---

1. At trial, and over the objections of the petitioner's attorney, Brown testified to the conversation as follows:

> Q. Did he [Saldana] say anything about what happened during the shooting?
> A. Well, that [the petitioner] wouldn't shoot and he had to make [the petitioner] shoot. He had to pull his pistol—put his pistol to [the petitioner] and make him open up, open fire on the police.
> Q. Did he [Saldana] say what happened?

> A. He say [the petitioner] shot, he shot through a window, through the car window.
> Q. Did José [Saldana] say anything about after that?
> . . . .
> A. I asked if he [the petitioner] had shot him and he told me, yeah, he repeated it like it just happened and he said that the cops started shooting [shouting?], I'm hit, I'm hit and the other one was hollering sarge, are you hurt, sarge, are you hurt.
> The Court: Who told you this?

petitioner fired his shotgun through the rear window at the officer. Several days later the petitioner himself told Brown that he shot the officer and that the shotgun was loaded with birdshot. The petitioner also claimed he had no money or place to hide, so Dolores DuBois contacted Barbara Majors and arranged for the petitioner to stay with her. The petitioner stayed at Majors' home, instructing her that, if questioned by the police, she should say that Saldana admitted to shooting the policeman. The petitioner was arrested on August 7, 1979 and, on May 16, 1980, he and Saldana were indicted together on charges of attempted murder in the first degree and four counts each of criminal possession of a weapon and criminal possession of stolen property in the third degree.

Prior to trial the petitioner moved for a severance pursuant to *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), on the ground that the evidence would include Saldana's statement to Brown implicating the petitioner in the offense. *See supra* n. 1. The court, relying on *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), denied the petitioner's motion, concluding that Saldana's statement was "so consistent and intertwined" with the petitioner's own statements to various witnesses as to be admissible as an interlocking confession. A jury convicted the petitioner on all counts on October 1, 1981 and he was sentenced to twenty-five years to life imprisonment. For reasons not important here, the petitioner did not perfect an appeal to the New York Supreme Court Appellate Division for several years. Following his conviction, but prior to perfecting his state appeal, the United States Supreme Court overturned *Parker v. Randolph,* holding that there was no "interlocking confession" exception to the *Bruton* rule. *See Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). The Appellate Division

affirmed the petitioner's conviction on June 13, 1989 on the basis of the harmless error rule annunciated in *Cruz,* 151 A.D.2d 279, 542 N.Y.S.2d 554. Leave to appeal that ruling was denied by the New York Court of Appeals on August 14, 1989.

The petitioner filed his federal habeas petition on July 2, 1991, arguing that the admission of Saldana's statement to Brown inculpating him in the shooting of Sergeant Pellicano violated his constitutional rights under the Confrontation Clause of the Sixth Amendment. The respondent argued that Saldana's statement was admissible as an admission against penal interest, because in *Bruton* the Supreme Court did not preclude evidence of a nontestifying codefendant's admission under a recognized hearsay exception.[2] The respondent further argued that even if admission of the statement was improper, any error was harmless given the weight of the evidence against the petitioner. The district court concluded, however, that Saldana's statement was not admissible as a hearsay exception to *Bruton* because a statement against penal interest is not a "firmly rooted" hearsay exception. The district court then rejected the respondent's claim that the admission was harmless error under *Cruz.*

### DISCUSSION

The respondent contends on appeal that the district court improperly concluded, first, that the introduction of Saldana's statement to Brown that he forced the petitioner to shoot Pellicano violated the petitioner's constitutional rights under the Confrontation Clause and, second, that any trial error was not harmless. We agree with both contentions.

■■■ The Confrontation Clause provides that "[i]n all criminal prosecutions, the ac-

---

The Witness: José told me this.
The Court: By José you mean José Saldana.
The Witness: Yes.
Tr. at 1604–05.

**2.** The district court agreed with the petitioner that the respondent's failure to raise this claim before the trial court precluded its use in a habeas proceeding. The failure, however, of state prosecutors to raise a particular argument

below "does not mean that federal courts lack power to consider arguments by the State that bear on whether a prisoner is in fact 'in custody in violation of the Constitution or laws ... of the United States.'" *Pinkney v. Keane,* 920 F.2d 1090, 1093 (2d Cir.1990) (quoting 28 U.S.C. § 2241(c)(3) (1988)), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991).

cused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend VI. Sixth Amendment protections are not so broad, however, as to exclude "the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." *Maryland v. Craig,* 497 U.S. 836, 847–848, 110 S.Ct. 3157, 3164, 111 L.Ed.2d 666 (1990). Certain hearsay statements are admissible if (1) the declarant is "unavailable" to testify, and (2) the statement "bears adequate 'indicia of reliability.'" *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (quoting *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972)). A declarant is unavailable for purposes of Confrontation Clause analysis if he invokes his Fifth Amendment privilege against self-incrimination and refuses to testify at trial. *See, e.g., United States v. Bakhtiar,* 994 F.2d 970, 977 (2d Cir.), *cert. denied,* ––– U.S. –––, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993); *United States v. Beltempo,* 675 F.2d 472, 480 (2d Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982). As Saldana invoked his Fifth Amendment rights and refused to testify, he was unavailable as a witness. The central question in this appeal, therefore, is whether Saldana's statement possessed adequate "indicia of reliability."

██ A statement is presumptively reliable if it falls within a firmly rooted hearsay exception. *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. A hearsay exception is "firmly rooted" if it "rest[s] upon such solid foundations that admission of virtually any evidence within [it] comports with the 'substance of constitutional protection.'" *Id.* Evidence admitted under such an exception thus is presumed to be "so trustworthy that adversarial testing would add little to its reliability." *Idaho v. Wright,* 497 U.S. 805, 821, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638

(1990). Evidence that does not fall within a firmly rooted hearsay exception, however, is inadmissible under the Confrontation Clause "absent a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539 (footnote omitted).

This Court recently addressed the question whether the statement against penal interest is firmly rooted, only to conclude that because the statements in that case bore adequate indicia of reliability there was no need to resolve the issue. *See United States v. Matthews,* 20 F.3d 538, 545 (1994). Thus the issue remains open in this Circuit. There is no need to resolve the issue here, however, as Saldana's statement also bears adequate indicia of reliability and is thus admissible under the totality of the circumstances.[3]

As we noted in *Matthews,*

The difficulty is that if the statement against penal interest is multi-faceted, its facets may not be uniformly trustworthy. So much of a statement as simply implicates the declarant in a crime is generally trustworthy, for 'people do not ordinarily make statements damaging to themselves unless they are true.' *United States v. Bakhtiar,* 994 F.2d at 978. However, to the extent that the declarant's statement implicates another person in the crime, it may in some circumstances constitute an attempt to minimize the declarant's own culpability, or to shift blame to another, or to curry favor with authorities. *See, e.g., Lee v. Illinois,* 476 U.S. 530, 544–45, 106 S.Ct. [2056] at 2064–65 [90 L.Ed.2d 514] (1986); *United States v. Bakhtiar,* 994 F.2d at 978; *United States v. Katsougrakis,* 715 F.2d [769, 776 (2d Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984) ].

*United States v. Matthews,* 20 F.3d at 545.

██ As a general matter, if a declarant's statement results from a formal police inter-

---

3. The respondent notes that at the time of the petitioner's trial the prevailing view, recognized by the Second Circuit, was that a declaration against penal interest was a firmly rooted exception to the hearsay rule. *See United States v. Katsougrakis,* 715 F.2d 769, 775 (2d Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). The respondent claims that the district court incorrectly abandoned *Katsoug-*

*rakis,* adopted a new rule, and retroactively applied it to the petitioner's case, thereby violating the general rule prohibiting federal habeas courts from retroactively applying new rules to upset state convictions. *See Teague v. Lane,* 489 U.S. 288, 307, 109 S.Ct. 1060, 1073–1074, 103 L.Ed.2d 334 (1989). As we conclude that Saldana's statement was admissible, we need not address the respondent's claim.

rogation, it cannot be introduced against a defendant as evidence of his guilt unless other evidence demonstrates that the defendant adopted or authorized the statement. *Lee v. Illinois,* 476 U.S. at 541–42, 106 S.Ct. at 2062–63. The admission of such a statement may not violate the Confrontation Clause, however, if the declarant makes the statement to someone he believes is an ally, and "if the circumstances surrounding the portion of the statement that inculpates the defendant provide no reason to suspect that that inculpatory portion is any less trustworthy than the part of the statement that directly incriminates the declarant." *United States v. Matthews,* 20 F.3d at 546. Where, under all the circumstances, the portion of the declaration inculpating another " 'is just as trustworthy as the portion of the statement directly incriminating the declarant, there is no need to excise or sever the inculpatory portion of the statement' " relating to the defendant. *United States v. Bakhtiar,* 994 F.2d at 978 (quoting *United States v. York,* 933 F.2d 1343, 1364 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991)). Finally, an assessment of the "indicia of reliability" need consider only whether the statement reflects the declarant's perception of events accurately, and not whether the declarant was correct in what he believes is the meaning of those events. *United States v. Bakhtiar,* 994 F.2d at 978. Accordingly, a major consideration in determining whether a declarant's statement is reliable is whether he attempted to "minimize his exposure by including [the defendant] in his comments." *Id.*

■ An independent examination of Saldana's statement indicates its reliability. First, the statement was made shortly after the criminal incident, thereby giving Saldana little opportunity to reflect on the events and to prepare a story. Considerable evidence also tied Saldana to the crime, and thus he was in a position to know the truth. Further, Saldana made the statement to a perceived ally, not to law enforcement officials, and thus it cannot be said that he made the statement in an effort to curry favor or in a coercive atmosphere. *See United States v. Katsougrakis,* 715 F.2d at 776 (trustworthiness shown by lack of any 'persuasive showing that [the declarant] had an ulterior motive when conversing with his friend'). Finally, Saldana actually inculpated himself in the statement. Rather than simply stating that the petitioner fired the shot that struck Pellicano, Saldana tied himself directly to the crime by stating that he forced the petitioner at gunpoint to fire upon Pellicano. *See United States v. Rahme,* 813 F.2d 31, 36 (2d Cir.1987) (trustworthiness indicated in part by fact that even portion that inculpated defendant was against the declarant's penal interest). Saldana's statement accurately reflected his perception of the events, and under all the circumstances the portion inculpating the petitioner is as trustworthy as the portion inculpating himself. Accordingly, because the statement "bears adequate 'indicia of reliability,' " *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539, we conclude that its admission did not violate the petitioner's rights under the Confrontation Clause. Even were we to conclude the contrary, however, any error was harmless.

■ In *Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Supreme Court held that the standard for determining whether habeas relief must be granted based upon a constitutional error at trial is not whether the error was harmless beyond a reasonable doubt, but whether it "had substantial and injurious effect or influence in determining the jury's verdict." —— U.S. at ——, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *see also Samuels v. Mann,* 13 F.3d 522, 523 (2d Cir.1993). As it is virtually impossible to determine whether a jury did or did not ignore an inculpatory statement, the determination of whether an error is harmless depends upon a host of other factors, all readily accessible to reviewing court. *See Samuels v. Mann,* 13 F.3d at 526. These include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, and the overall strength of the prosecution's case. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). "The

strength of the prosecution's case is probably the single most critical factor in determining whether error was harmless." *United States v. Castano*, 999 F.2d 615, 618 (2d Cir.1993) (per curiam); *see also* 3A Charles A. Wright, *Federal Practice and Procedure* § 854, at 305 (2d ed. 1982).

Stripped of Saldana's statement incriminating the petitioner, the weight of the evidence against the petitioner was substantial. Brown also testified at trial that the petitioner told him that he shot Pellicano. Patricia and Loretta Martin each also testified that the petitioner admitted shooting the officer and Barbara Majors testified that the petitioner hid in her apartment and told her to tell the police that Saldana fired the shot, thereby evidencing consciousness of guilt. Brown testified that the petitioner carried a sawed-off shotgun and a gun cleaning kit in a bag into the apartment prior to the shooting, and that these items were similar to the evidence recovered in and around the Malibu. Finally, the police investigation uncovered the petitioner's fingerprint on the car. This testimony and evidence, in addition to corroborating Saldana's statement to Brown, established an independent and strong basis for the case against the petitioner. *See United States v. Castano*, 999 F.2d at 618. Accordingly, even were we to find that Saldana's statement was improperly admitted, we conclude that the statement did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, —— U.S. at ——, 113 S.Ct. at 1714; *Samuels v. Mann*, 13 F.3d at 527.

## CONCLUSION

For the reasons stated above, the judgment of the district court is hereby VACATED and the case REMANDED with direction to dismiss the petitioner's writ.