# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 18, 2004 Session

## STATE OF TENNESSEE v. NONA PILGRAM

**Appeal from the Circuit Court for Bledsoe County**
**No. 22-2003     Thomas W. Graham, Judge**

---

**No. E2004-00242-CCA-R3-CD - Filed March 14, 2005**

---

A Bledsoe County grand jury indicted the defendant, Nona Pilgram, for assault and vandalism resulting in $1,000 to $10,000 in damages to the vehicle of the victim, Molly Myers. A jury acquitted the defendant of assault but convicted her of vandalism resulting in $500 to $1,000 in damages. For this conviction, the court ordered the defendant to serve a six-year probationary sentence. The defendant now appeals her conviction and sentence, arguing that she is entitled to a new trial or resentencing on the following grounds: (1) The trial court erred by refusing to allow testimony regarding the victim's prejudice towards the defendant; (2) the trial court erred by allowing hearsay evidence regarding the fair market value of the victim's vehicle; (3) the trial court erred by refusing to allow the introduction of an internet-based estimate of the victim's vehicle; and (4) the trial court erred by failing to comply with Tennessee Code Annotated sections 40-35-102 through 121 when determining whether the defendant was a viable candidate for judicial diversion. After a thorough review of the record and applicable law, we affirm the defendant's conviction and sentence.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Philip A. Condra, District Public Defender; and B. Jeffery Harmon, Assistant District Public Defender, for the Appellant, Nona Pilgram.

Paul G. Summers, Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; James Michael Taylor, District Attorney General; and James W. Pope, III, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

In the light most favorable to the state, the evidence, apparently accredited by the jury, showed the following facts. On December 23, 2002, the defendant, her husband, Duane Pilgram, and their daughter traveled to Pikeville, Tennessee to visit the defendant's family. The defendant telephoned her sister, Donna Campbell, to inform her that she would be visiting their home, apparently to arrange for the defendant's daughter to spend the night with the Campbells.

Ms. Campbell had spent the day in question with her good friend, the victim, Molly Myers. Ms. Myers had accompanied Ms. Campbell to a physician's appointment, and the two had been Christmas shopping. When the defendant telephoned the Campbells' residence to arrange to drop off her daughter, Ms. Myers was in the Campbells' bedroom helping Ms. Campbell wrap Christmas presents. During the telephone conversation between Ms. Campbell and the defendant, Ms. Campbell informed the defendant that the victim was present and advised her against coming to the Campbells' home. Conflict existed between the defendant and the victim, and Ms. Campbell was aware that the defendant would not permit her children to associate with the victim.

Several minutes after the telephone conversation between Ms. Campbell and the defendant, the Pilgrims arrived at the Campbell residence. Mr. Pilgram and their daughter waited outside in their vehicle while the defendant went to the door. When the defendant arrived, Duane Campbell, the defendant's brother-in-law, answered the door and told the defendant that the victim was present and that the defendant should not come in. Nevertheless, the defendant then proceeded to the Campbells' bedroom. Although Ms. Campbell and the victim had locked the bedroom door when the defendant arrived, the defendant was able to open it by forcefully pushing it, due to the nature of the door's construction. Mr. Campbell followed the defendant into the bedroom and restrained her when she lunged across the bed towards the victim and Ms. Campbell. The defendant yelled at both the victim and Ms. Campbell, punctuating her speech with much profanity. Mr. Campbell escorted the defendant outside. As the defendant passed the victim's vehicle as she made her way towards her vehicle, she bent down by the victim's vehicle, grabbed a rock or some gravel, and scratched the victim's vehicle with it. At this point, the victim exited the Campbells' residence and exchanged words with the defendant. Mr. Campbell then instructed Mr. Pilgram to remove the defendant from the Campbells' property. Mr. Pilgram subsequently grabbed the defendant to escort her back to their vehicle, at which time the defendant kicked the victim's vehicle. Mr. Campbell radioed the police from outside the Campbells' residence, while Ms. Campbell telephoned the police from inside the residence.

Once in her vehicle, the defendant went to her mother's residence. When the police arrived at the Campbells' residence, the defendant was not present. The victim followed the officers to the police department where she swore out warrants against the defendant. Later that evening the police located the defendant at her father's residence.[1] According to the arresting officer's

---

[1] The defendant's mother and father lived in separate residences.

-2-

testimony, the defendant was angry that charges had been pressed against her and resisted being taken into custody.

At trial, the victim testified that the fair market value of her vehicle before the defendant damaged it was between $4,500 and $5,000 because she had received a $5,000 offer for her vehicle, a 1985 Toyota pick-up truck, before it was damaged. The victim estimated that the vehicle's value depreciated to an approximate worth of between $3,000 and $3,500. The victim based her opinion of the damages on several repair estimates that she received from various vehicle body repairmen.

In her case in chief, the defendant sought to introduce an internet-based estimate of the vehicle's undamaged value, but the court rejected the evidence, stating that it lacked relevance and trustworthiness. The defendant also sought to introduce evidence illuminating the relationship among the victim, the defendant, and the defendant's husband. Specifically, the defendant made an offer of proof evidencing that the victim had allegedly had a sexual relationship with the defendant's husband, that the victim reported she might be pregnant as a result of the relationship, and that the victim had requested money from the defendant and her husband to fund an abortion. Apparently, the victim also had previously obtained warrants against the defendant's husband, although these warrants were later dismissed. The defendant argued that this evidence was relevant to show the victim's prejudice towards the defendant and, therefore, was germane to the victim's credibility. However, the court excluded the evidence on the basis that it was irrelevant to the issues at trial.

The jury convicted the defendant of vandalism resulting in $500 to $1,000 in damages but acquitted her of the assault charge. During the defendant's sentencing hearing, the defendant requested that the court grant judicial diversion in her case. When the court refused to do so, the defendant requested classification as an especially mitigated offender, which the court also declined. Instead, the court sentenced the defendant as a Range I standard offender and ordered her to serve a six-year probationary sentence. The defendant now brings this direct appeal of her conviction and sentence, challenging several evidentiary rulings and the court's failure to grant judicial diversion.

## I. Evidentiary Issues

The first three issues raised by the defendant in this appeal relate to various evidentiary rulings of the lower court.

### A. Testimony Evidencing Prejudice

The defendant argues that the trial court erred by refusing to allow testimony regarding the victim's prejudice towards the defendant. Specifically, the defendant alleges that the trial court should have allowed her counsel (1) to introduce evidence regarding the victim's alleged affair with the defendant's husband as part of her case in chief and (2) to effectively cross-examine the victim about this alleged affair and therefore expose the victim's prejudice against the defendant. The defendant argues that counsel should have been allowed to both introduce evidence of and

question the victim about the history of her relationship with the defendant's husband, including their alleged sexual relationship and the fact that the victim had obtained warrants against the defendant's husband. The defendant further alleges that these errors violated Tennessee Rules of Evidence 616 and 611(b) as well as her constitutional right to confront witnesses against her. The state counters that the trial court correctly found that this testimony was irrelevant. The state posits that the court allowed questioning which revealed that the two disliked each other, which was enough to suggest prejudice on the part of the victim.

The record reveals that during defense counsel's opening statements, the state objected to counsel's anticipated statements about the alleged affair between the victim and the defendant's husband. The court held a jury-out hearing and ruled *in limine* that the defendant could not introduce evidence of the affair nor cross-examine the victim on the subject because the affair was irrelevant to the crimes at issue. At the conclusion of the proof, the defense made an offer of proof in which counsel summarized the substance of the testimony that the defendant would have elicited if allowed to do so.[2] Duane Pilgram, the defendant's husband, would have testified that he engaged in a sexual relationship with the victim shortly before he reconciled with his wife. Thereafter, the victim contacted Mr. Pilgram and informed him that she might be pregnant, in which event she would need money to fund an abortion. Furthermore, the defendant introduced copies of arrest warrants alleging that Mr. Pilgram had assaulted the victim and threatened her by phone. At the conclusion of the offer of proof, counsel argued that the evidence was relevant to show that the victim was upset when the defendant and her husband reconciled, thereby affecting her credibility as a witness against the defendant.

We begin our analysis by noting that on appellate review, the trial court's determination of admissibility on the issues at hand will not be reversed unless the court abused its discretion in admitting or excluding the challenged evidence. *See, e.g., State v. Bigbee*, 885 S.W.2d 797, 806 (Tenn. 1994).

Tennessee Rule of Evidence 616 states that "[a] party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." Tenn. R. Evid. 616. Rule 611(b) provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility . . . ." Tenn. R. Evid. 611(b). Any "feelings that a witness has with regard to a party or issue are an important factor for the trier of fact to consider in assessing the weight to be given to the witness' testimony." *State v. Williams*, 827 S.W.2d 804, 808 (Tenn. Crim. App. 1991).

The Sixth Amendment guarantees a criminal defendant the right to cross-examine witnesses against her. *See, e.g., Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105 (1974). Moreover, the rights of confrontation and cross-examination are essential to a fair trial. *See, e.g., Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065 (1965). Furthermore, the Fifth Amendment guarantees due

---

[2] At the suggestion of the trial court, defense counsel summarized the proffered evidence rather than introducing actual witness testimony.

process for each criminal defendant. *See United States v. Nixon*, 418 U.S. 683, 711, 94 S. Ct. 3090, 3109 (1974). However, neither the Sixth Amendment right of confrontation nor the Fifth Amendment due process clause authorizes the use of irrelevant evidence. *See id.* ("The right to the production of all evidence at a criminal trial similarly has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right 'to be confronted with the witnesses against him' and 'to have compulsory process for obtaining witnesses in his favor.' Moreover, the Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced."); *see also United States v. Abel*, 469 U.S. 45, 50, 105 S. Ct. 465, 468 (1984) (finding that evidence that the defendant and a defense witness were both members of the same prison gang was relevant to the issue of the witness's bias under the federal rules of evidence and noting that the Sixth Amendment, which guarantees the right to cross-examination and thus expose the bias or prejudice of a witness, created a foundation for the federal rules).

In the instant case, the trial court ruled that the proffered evidence was irrelevant and therefore inadmissible both on cross-examination and as extrinsic evidence. However, we find that the alleged relationship between the victim and the defendant's husband was relevant to the victim's credibility and accordingly that the trial court's ruling ran afoul of both Tennessee Rule of Evidence 616 and the defendant's right of confrontation.

### i. Assault

The elements of the crime of assault require that the victim be placed in imminent fear of bodily injury, *see* Tenn. Code Ann. § 39-13-101(a)(2) (2003), which typically means that a conviction for assault must hinge on the testimony of the victim. Thus, the alleged affair was a proper ground for cross-examination because it would have been relevant to impeach the victim's testimony, and an assault conviction would depend on the jury crediting her testimony. However, the jury acquitted the defendant of assault, and accordingly we find that the error in failing to allow the defendant to cross-examine the victim on this subject is harmless beyond a reasonable doubt. *See* Tenn. R. Crim. P. 52(a); *Cruz v. New York*, 481 U.S. 186, 193, 107 S. Ct. 1714, 1719 (1987) (confrontation violation subject to harmless error analysis).

### ii. Vandalism

Turning next to the victim's vandalism conviction, the evidence supporting this conviction includes not only the victim's testimony, but the testimony of Mr. Campbell, who witnessed the defendant vandalize the victim's vehicle, as well as several photographs taken of the damage inflicted to the victim's vehicle. Therefore, even excluding the victim's testimony, the remaining evidence would have been sufficient to support the defendant's vandalism conviction. Furthermore, the jury's verdict reflects that it did not rely on the victim's testimony when determining the grade of the offense; the victim's testimony supported a conviction for the defendant's indicted crime, vandalism resulting in $1,000 to $10,000 in damages, but the jury

convicted the defendant of a lesser crime, vandalism resulting in $500 to $1,000 in damages. Considering the other evidence supporting the defendant's vandalism conviction and our inference that the jury did not rely heavily on the victim's testimony when finding the defendant guilty of vandalism, we find that any error in curtailing the scope of the victim's cross-examination as it related to the victim's vandalism conviction is similarly harmless beyond a reasonable doubt. *See* Tenn. R. Crim. P. 52(a); *Cruz*, 481 U.S. at 193, 107 S. Ct. at 1719.

### B. Hearsay Testimony Regarding the
### Fair Market Value of the Victim's Vehicle

Next, the defendant argues that the trial court erred by admitting hearsay evidence regarding the fair market value of the victim's vehicle. At trial, the victim testified that she estimated the fair market value of her vehicle to be approximately $4,500 to $5,000, and she based her estimate on an unsolicited offer she received from a stranger in a bank parking lot before her vehicle was damaged. The defendant argues that this testimony was inadmissible hearsay. The state responds that the defendant has failed to prove how this alleged error negatively impacted her trial and that if the trial court erred in admitting the evidence, the error was harmless.

As discussed *supra*, the defendant was convicted of vandalism causing damage in the amount of $500 to $1,000. Tennessee Code Annotated section 39-14-408 defines the crime of vandalism as "knowingly caus[ing] damage to or . . . destr[oying] . . . any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent." Tenn. Code Ann. § 39-14-408(a) (2003). The statute further instructs that "[a]cts of vandalism are to be valued according to the provisions of § 39-11-106(a)(36)," which defines the term value as the fair market value of the property loss at the time and place of the offense, if ascertainable. *Id.* §§ 39-14-408(c)(1), 39-11-306(a)(36). Thus, the fair market value of the damage to the victim's vehicle was an essential element of the crime at issue.

The owner of the property is permitted to testify about her opinion of the value of the property. *See* Tenn. R. Evid. 701(b). Moreover, the value of the cost of repairs is an appropriate means of determining the value of the damage sustained to the vandalized property. *See, e.g.*, *State v. Terry W. Bean*, No. M2003-02062-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Nashville, Oct. 28, 2004). We first note that while the victim in the instant case was properly allowed to give her opinion of the diminution in her vehicle's value pursuant to Rule 701(b), we believe that the victim's testimony exceeded the permissible ambit of that rule because she testified not merely as to her opinion, but repeated hearsay as the basis of her opinion.[3]

---

[3] We have considered whether the victim's reference to the statement made by this individual she encountered in a bank parking lot could be considered a legally effective offer to purchase the victim's vehicle for $5,000 and that repeating this statement on direct examination was intended to reflect such an offer and not intended to prove the truth of the matter asserted by the declarant. We further question whether using this statement as evidence of a binding offer is material when the method of valuation for the loss inflicted to the damaged property is the owner's opinion. However, we have not analyzed this issue any further in light of our finding, discussed *infra*, that any error in

(continued...)

Indeed, the state concedes that the victim's testimony that she received a $5,000 offer for her vehicle before it was damaged does not fall within a recognized hearsay exception. We agree but find that the error was harmless. As we discussed in the context of the defendant's first evidentiary challenge, the jury's verdict reflects that the jury did not credit the victim's testimony. The victim testified that her vehicle's value was between $4,500 and $5,000 before it was damaged, and she estimated her vehicle's value to be between $3,000 and $3,500 after it was damaged, reflecting damages ranging between $1,000 and $2,000. However, the jury convicted the defendant of the lesser crime of vandalism resulting in $500 to $1,000 in damages. Thus, it does not appear from the record that the victim's hearsay testimony adversely impacted the defendant. Accordingly, we find that the trial court's error in allowing this hearsay testimony is harmless. *See* Tenn. R. Crim. P. 52(a); *Cruz*, 481 U.S. at 193, 109 S. Ct. at 1719.

### C. Internet-Based Estimate of Vehicle's Value

In her third issue on appeal, the defendant claims that the trial court erred by refusing to admit an internet-based estimate of the value of the victim's 1985 Toyota pick-up truck. The defendant claims that the estimate was admissible pursuant to Tennessee Rule of Evidence 803(17). The state counters that the record does not establish that the trial court abused its discretion when ruling on the admissibility of these reports and therefore the issue does not warrant reversal.

Tennessee Rule of Evidence 803(17) allows admission of certain published compilations that have an indicia of reliability due to their wide-spread use. *See* Tenn. R. Evid. 803(17). The defendant says that she attempted to introduce a print-off from the Kelly Blue Book's internet site, and because the internet site was created by a publication routinely admitted pursuant to Rule 803(17), the trial court erred by finding that the internet publication was irrelevant und untrustworthy.

A review of the record reveals that the trial court did not abuse its discretion by excluding the evidence based on its untrustworthiness. The internet-based estimate that the defense sought to introduce was an estimate of the current value of the victim's vehicle, as opposed to the vehicle's value at the time of the crime. In order to compensate for this discrepancy, the defendant had subtracted 15,000 miles from the vehicle's current mileage although there was no evidence introduced regarding the approximate mileage of the vehicle at the time of the crime. Moreover, the estimate did not calculate the appreciation or depreciation caused by the passage of time and by the fact that the vehicle had been totaled, rebuilt, and repainted. Finally, as the state's brief notes, defense counsel did not present a foundation for the evidence or inform the court how the report would be authenticated. *See* Tenn. R. Evid. 901. Accordingly, we find that the trial court acted within the purview of its discretion when excluding this evidence. *See State v. Bigbee*, 885 S.W.2d 797, 806 (Tenn. 1994).

---

[3](...continued)
allowing the introduction of this statement is harmless due to our inference that the jury did not rely on this statement when convicting the defendant.

## II. Judicial Diversion

When sentencing the defendant for her vandalism conviction, the trial court imposed the minimum Class E felony Range I sentence of one year but ordered the defendant to serve a six-year probationary sentence. The defendant challenges her sentence on the basis that she was a deserving candidate for judicial diversion and that the trial court erred by failing to grant judicial diversion and by failing to follow the mandates of Tennessee Code Annotated sections 40-35-102 to 121 when ruling on the defendant's request. The state responds that the record supports the trial court's finding and that the court did not abuse its discretion when refusing to grant judicial diversion.

The Sentencing Reform Act of 1989 allows a sentencing court to "defer further proceedings and place the person on probation upon such reasonable conditions as it may require without entering a judgment of guilty and with the consent of such person," provided that the candidate has not, *inter alia*, previously pleaded guilty to or been convicted of a felony or Class A misdemeanor. Tenn. Code Ann. § 40-35-313(a) (2003). This procedure, commonly known as judicial diversion, is similar to pretrial diversion; however, judicial diversion follows a determination of guilt, and the decision to grant diversion rests with the trial court, not the prosecutor. *See State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

The lower court's denial of judicial diversion is subject to reversal on appeal only if that court abused its discretion. *See State v. Hammersley*, 650 S.W.2d 352, 356 (Tenn. 1983). An abuse of discretion occurs when the trial court's denial of judicial diversion is unsupported by any substantial evidence. *See State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

In determining whether to grant judicial diversion, the trial court must consider (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. *Parker*, 932 S.W.2d at 958; *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). Moreover, the record must reflect that the court has weighed all of the factors in reaching its determination. *See Bonestel*, 871 S.W.2d at 168. That is, the court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. *See id.*

When defense counsel requested that the lower court grant judicial diversion in the present case, the court discussed the applicability of the factors outlined above. The court found that the last factor, whether judicial diversion would serve the interests of the public as well as the accused, was determinative of the court's decision and weighed against granting judicial diversion. Specifically, the court found that the defendant's apparent unwillingness to compensate the victim, as ordered by the court, or to pay the outstanding court fine, coupled with her lack of candor about

her financial situation and her seeming lack of remorse for committing the crime in question indicated that the defendant was not a desirable candidate for judicial diversion. We find that the lower court adequately explained why it declined to grant judicial diversion in this case and why the factor relied upon outweighed all other factors. We discern no abuse of discretion in denying diversion. *See, e.g., State v. Dowdy*, 894 S.W.2d 301, 307 (Tenn. Crim. App. 1994) (finding that the trial court did not abuse its discretion by refusing to grant judicial diversion based on the defendant's unrepentant attitude and dishonest nature); *Anderson*, 857 S.W.2d at 573-74 (finding that the sentencing court was in the best position to observe the defendant's attitude and demeanor and the appellate court should not disturb the lower court's refusal to grant judicial diversion based on the defendant's attitude and demeanor).

### III.  Conclusion

In sum, we find that the defendant has failed to demonstrate that any of the trial court's evidentiary rulings warrant reversal or that the trial court abused its discretion when refusing to grant judicial diversion. Accordingly, the judgment of the lower court is affirmed.

_____
JAMES CURWOOD WITT, JR,. JUDGE