ACCEPTED
12-14-00150-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
7/3/2015 5:55:55 PM
CATHY LUSK
CLERK

No. 12-14-00150-CR

_____

IN THE COURT OF APPEALS OF TEXAS
FOR THE TWELFTH CIRCUIT
TYLER, TEXAS

_____

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
7/3/2015 5:55:55 PM
CATHY S. LUSK
Clerk

*DEEDRA GRUBBS*
Appellant

v.

*THE STATE OF TEXAS*
Appellee

_____

On Appeal From Cause No. 14-CR-19075
In the 273RD Judicial District Court of Shelby County, Texas

_____

APPELLANT DEEDRA GRUBBS' BRIEF

_____

THE LAW OFFICE OF JEFF ADAMS, PLLC

Jeff Adams
State Bar No. 24006736
119 Logansport Street
Center, Texas 75935
(936) 598-4900 (Phone)
(936) 598-4905 (Facsimile)

**ATTORNEY FOR DEEDRA GRUBBS**

## IDENTITY OF PARTIES AND COUNSEL

In accordance with TEX. R. APP. P. 38.1(a), the following is a list of the parties to this action, their respective counsel, and the presiding judge at trial:

| | |
|---|---|
| Appellant: | Ms. Deedra Grubbs ("Grubbs") |
| Appellant's Trial Counsel: | Mr. Dexter A. "Deck" Jones<br>Attorney at Law<br>713 Tenaha Street<br>Center, Texas 75935<br>(936) 598-5737 |
| | Mr. Rudy Velasquez<br>Attorney at Law<br>P. O. Box 308<br>Milam, Texas<br>(936) 229-0110 |
| Appellant's Appellate Counsel: | Mr. Jeff Adams<br>The Law Office of Jeff Adams, PLLC<br>119 Logansport Street<br>Center, Texas 75935<br>(936) 598-4900 |
| Appellee: | The State of Texas ("State") |
| Appellee's Trial and Appellate Counsel: | Mr. Ralph Guerrero (Special Prosecutor)<br>Mr. Wesley Mau (Special Prosecutor)<br>Mr. Kenneth Florence<br>Shelby County District Attorney<br>200 San Augustine Street<br>Center, Texas 75935<br>(936) 598-2489 |
| Trial Judge: | The Honorable Charles R. Mitchell |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ......................................................... ii

TABLE OF CONTENTS ............................................................................... iii

TABLE OF AUTHORITIES ..........................................................................iv

REFERENCES TO THE RECORD ..................................................................2

STATEMENT OF ISSUE................................................................................2

STATEMENT OF THE CASE.........................................................................2

STATEMENT OF FACTS ..............................................................................3

SUMMARY OF THE ARGUMENT .................................................................5

ARGUMENT ...............................................................................................6

A. *The trial court committed reversible error when it failed to admit hearsay statements contained in letters written by Co-Defendant Bobbie Grubbs which contained exculpatory statements relating to Appellant Grubbs.* ........................6

B. *The trial court committed reversible error when it failed to admit hearsay statements made by Co-Defendant Bobbie Grubbs contained in a DPS trooper's in-car video/audio recording which contained exculpatory statements relating to Appellant Grubbs* .................................................................................15

CONCLUSION AND PRAYER .......................................................................21

CERTIFICATE OF SERVICE .......................................................................22

CERTIFICATE OF WORD COUNT COMPLIANCE.........................................22

# TABLE OF AUTHORITIES

## CASES

*City of Brownsville v. Alvarado,* 897 S.W.2d 750 (Tex.1995)........................ 7

*Cruz v. New York*, 481 U.S. 186 (1987) ....................................................... 11

*Davis v. State*, 872 S.W.2d 743 (Tex. Crim. App. 1994) .......... 13, 14, 19, 20

*Dewberry v. State,* 4 S.W.3d 735 (Tex. Crim. App. 1999)....................... 8, 16

*In re R.A.L.,* 291 S.W.3d 438 (Tex.App.-Texarkana 2009, no pet.)........... 7, 8

*Lee v. Illinois*, 476 U.S. 530, 546 (1986)........................................... 8, 16, 17

*Lopez v. State*, 2003 WL 751809 (Tex. App. – Dallas, no writ) ................. 12

*Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664 (Tex.1996)............ 7

*McCraw v. Maris*, 828 S.W.2d 756 (Tex. 1992) ........................................... 8

*Ohio v. Roberts*, 448 U.S. 56 (1980) ...................................................... 8, 16

*Walter v. State*, 267 S.W.3d 883 (Tex. Crim. App. 2008) ..................... 12, 18

*Williamson v. United States*, 512 U.S. 594 (1994) ..................................... 18

## STATUTES AND RULES

TEX. R. EVID. 803(24) (Texas Lawyer 2015).......................... 6, 8, 14, 16, 21

## REFERENCES TO THE RECORD

*Clerk's Record:* There are two (2) Volumes of the Clerk's Record. All references to the Clerk's record will be made in the following fashion: v CR p, where v represents the volume of the record and p represents the page number found in same.

*Reporter's Record:* There are thirteen (13) Volumes of the Reporter's Record. All references to the Clerk's record will be made in the following fashion: v RR p, where v represents the volume of the record and p represents the page number found in same.

## STATEMENT OF ISSUES

1. Did the trial court err when it excluded certain letters written by Co-Defendant Bobbie Grubbs that, while hearsay, contained exculpatory statements relating to Appellant Grubbs and was an exception to the hearsay rule?

2. Did the trial court err when it excluded an in-car audio/video recording of Co-Defendant Bobbie Grubbs that, while hearsay, contained exculpatory statements relating to Appellant Grubbs and was an exception to the hearsay rule?

## STATEMENT OF THE CASE

On September 25, 2012, Grubbs was indicted for Capital Murder in Cause Number 12-CR-18608. On February 19, 2014, Grubbs was re-indicted in Cause Number 14CR-19074, on one count of Capital Murder and two counts of Aggravated Assault. 1 CR 8. On March 4, 2014, the State filed a motion to transfer the pleadings from Cause Number 12-CR-18608 to Cause Number 14CR-

19074. 1 CR 10. The Court granted the State's Motion on March 21, 2014. 1 CR 23.

On May 28, 2014, the jurors were seated, sworn and the trial commenced. 4 RR 10-11. On June 4, 2014, the jury found Grubbs guilty of one count of Capital Murder and two counts of Aggravated Assault. 9 RR 195-197. On the same day, June 4, 2014, the Court sentenced Grubbs to confinement in the Institutional Division of the Department of Criminal Justice for life without the opportunity of parole on the Capital Murder charge, and confinement in the Institutional Division of the Department of Criminal Justice for twenty years on each of the two aggravated assault charges. 9 RR 201-203.

On June 10, 2014, Grubbs filed a Motion for New Trial. 2 CR 221-222. The Motion was overruled as a matter of law. Also on June 10, 2014, Grubbs timely filed her Notice of Appeal. 2 CR 223. Grubbs now files her Appellant's Brief.

## STATEMENT OF FACTS

The State accuses Grubbs of committing capital murder and two aggravated assaults arising from an incident at the Joaquin Country Inn in Joaquin, Texas on April 27, 2012. 4 RR 24-26. The State alleges that Grubbs and her husband, Bobbie Grubbs, fled Montgomery County, Texas, on April 26, 2012, after they had robbed Mary Jane Cashdollar in her home. 4 RR 30. The State asserts that Grubbs

and Bobbie Grubbs made their way north from Conroe, north through Nacogdoches, on their way to Louisiana, when they began having car trouble. 4 RR 31. The State alleges that Grubbs' car broke down in Joaquin, Texas, near the Country Inn on April 26, 2012. 4 RR 31. Grubbs and Bobbie stayed that night at the Country Inn in Room 101. 4 RR 32. The State asserts that Bobbie did not have enough money to get the car repaired, so that next morning he went into another room at the Country Inn where two housekeepers and a handyman were working, shot and robbed them. 4 RR 32. One of the housekeepers died as a result of the gunshot wounds she received; the other two employees of the Country Inn survived. 4 RR 33.

The authorities located Grubbs and Bobbie Grubbs and intercepted them on United States Highway 59 South, somewhere between Livingston and Cleveland in Liberty County. 4 RR 34. Grubbs and Bobbie were ultimately apprehended just north of Cleveland by 2:30 p.m. on April 27, 2012. 4 RR 34. Grubbs was taken to the hospital after she fainted and ultimately to the Montgomery County Sheriff's Office, where she was interrogated by Montgomery County Sheriff Detective Echols and Zientek. 4 RR 34; State's Exhibit 26. Bobbie Grubbs also made statements to DPS Trooper Sean Barnes at the scene of his arrest and during his transport to the Montgomery County Sheriff's Office. Defendant's Exhibit 15. These statements by Bobbie Grubbs were excluded by the trial court. 9 RR 82.

At trial, Grubbs did not testify. 9 RR 84. Certain evidence proffered by Grubbs was excluded on hearsay objections by the State. 9 RR 79,82. This excluded evidence corroborates Bobbie Grubbs testimony, shows the jury that Bobbie Grubbs' statements have been consistent from the time of his arrest, and ultimately provides exculpatory and mitigating evidence to Grubbs' benefit.

In the end, on June 4, 2014, the jury found Grubbs guilty of one count of Capital Murder and two counts of Aggravated Assault. 9 RR 195-196. The Court sentenced Grubbs to confinement in the Institutional Division of the Department of Criminal Justice for life without the opportunity of parole on the Capital Murder charge, and confinement in the Institutional Division of the Department of Criminal Justice for twenty (20) years on each of the two aggravated assault charges. 9 RR 202-203.

## SUMMARY OF THE ARGUMENT

In this matter, Grubbs complains that the trial court committed errors relating to the exclusion of certain hearsay statements, both in written letters and in audio/video recordings. The trial court committed error when it failed to admit various letters from Bobbie Grubbs, written while he was incarcerated and waiting to be tried. These statements tend to provide exculpatory material to Grubbs, as Bobbie Grubbs explains that he was the lone actor in the shootings and assaults.

Also, the trial court committed error when it failed to admit a DPS trooper's in-car video/audio recording of Bobbie Grubbs, while he was being transported by Trooper Barnes to the Montgomery County Jail. These statements also tend to provide exculpatory material to Grubbs, as Bobbie Grubbs admits he lied to and forced Grubbs, as an unwilling and/or unknowing participant in his criminal acts.

These excluded statements, while hearsay, fit an exception to the hearsay rule as an admission against interest. TEX. R. EVID. 803(24) (Texas Lawyer 2015). These statements provide important and relevant exculpatory statements that would have benefitted Grubbs in the guilt/innocence phase of her trial, such exclusions were harmful to Grubbs, and are reversible error.

## ARGUMENT

In this appeal, Grubbs asserts two (2) grounds of error in this case that entitle her to reversal of her convictions and a new trial.

**A. The trial court committed reversible error when it failed to admit hearsay statements contained in letters written by Co-Defendant Bobbie Grubbs which contained exculpatory statements relating to Appellant Grubbs.**

After eliciting testimony from her expert witness in the case, Grubbs' trial counsel asked for a bench conference outside the presence of the jury. 9 RR 77. At that time, Grubbs offered Defendant's exhibits 7-12, which were letters written by Co-Defendant Bobbie Grubbs and were previously authenticated. 9 RR 78. The State objected to the letter exhibits as hearsay, specifically that the letter

exhibits did not fit the exception as statements by a co-conspirator. 9 RR 78-79.

Grubbs' trial counsel quickly pointed out to the State and trial court that the letter exhibits were being offered as statements against interest also. 9 RR 79. No additional argument was made by the State. 9 RR 79. After the trial court sustained the State's hearsay objection, Grubbs' trial counsel offered the letter exhibits for appellate purposes, and also for corroboration for other hearsay statements. 9 RR 79-82. The State did not object to this offer as corroboration by Grubbs. 9 RR 79-82.

After the court sustained the State's hearsay objection and thus ending her case-in-chief, Grubbs, outside of the presence of the jury, testified under oath that she would exercise her Fifth Amendment right to remain silent and not take the witness stand. 9 RR 83-84.

The admission or exclusion of evidence is a matter within the sound discretion of the trial court, which is reviewed under an abuse of discretion standard. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995); *In re R.A.L.,* 291 S.W.3d 438, 446 (Tex.App.-Texarkana 2009, no pet.). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles. *Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 666 (Tex.1996). "To reverse a judgment based upon error in the admission or exclusion of evidence, the appellant must show that the trial court

committed error and that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment." *R.A.L.,* 291 S.W.3d at 446; *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex.1992)). In this case, the trial court abused its discretion in excluding the letters and hearsay statements therein.

When a co-defendant makes an admission against interest, it is also admissible against the defendant, so long as (1) it is sufficiently against the co-defendant's own interest to be reliable, and (2) it is corroborated. *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999). Reliability is usually presumed when the declarant's statement falls under a traditional hearsay rule exception. *Ohio v. Roberts*, 448 U.S. 56, 68 (1980). However, a statement against the declarant's penal interest is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. TEX.R.EVID. 803(24) (Texas Lawyer 2015). A co-defendant's statement against penal interest is presumed unreliable, however, to the extent it inculpates a defendant. *See Lee v. Illinois*, 476 U.S. 530, 546 (1986). The rationale for this proposition is the obvious motive of an accomplice to shift some or all of the blame away from himself. *Id.* at 545.

In this case, Co-Defendant Bobbie Grubbs admits that he was the lone actor. In Defendant's Exhibit Seven (7), Bobbie Grubbs writes to Cindy Heil that "DeeDra (sic) is totally innocent. They have the bad guy, but they refuse to believe I was alone in this." 13 RR 133. Bobbie Grubbs also laments Grubbs'

incarceration and "...pray[s] all day long for DeeDra's (sic) release."  13 RR 133. Bobbie Grubbs states that "[s]he didn't fail.  I did."  13 RR 134.

In Defendant's Exhibit Eight (8), Bobbie Grubbs writes to Grubbs while she is in the same Montgomery County Jail as he is.  13 RR 135.  Co-Defendant Bobbie Grubbs tells Grubbs to not "... let your lawyer talk you into signing anything.  You are innocent of all this and I can prove it.  Put me up on the stand and I'll tellem (sic) how I made you knock on the door under the threat of death, by the 357 in my pants."  13 RR 136.  Bobbie Grubbs confirms that he had kept Grubbs' necessary medication from her in order to control her:  "All of your meds I hid from you were at the house.  That's evidence you were off of them.  I'm not scared to take responsibilities (sic) for my actions.  You tellem (sic) what I did." 13 RR 136.  Bobbie Grubbs even calls Grubbs a victim, stating "[y]our (sic) a victim too! Victim! Bobby is a crazy son of a bitch.  He tryed (sic) to kill me too! He had a gun on me and held me prisoner (unreadable).  So just tellem (sic) the truth...."  13 RR 137.

In Defendant's Exhibit Nine (9), Bobbie Grubbs writes to Nancy Kuhn, his sister-in-law.  13 RR 138.  He states that he'll "...be the bad guy on this.  All of it. So make sure Dee doesn't try to protect me, she fears God and we are husband and wife, so don't let her take a bullet for me."  13 RR 140.  Bobbie Grubbs further

states that "...she is innocent. Make her lawyer understand she acted out of fear for her life. I'm the bad guy." 13 RR 140.

In Defendant's Exhibit Ten (10), Bobbie Grubbs writes to Cindy Heil again, 13 RR 142, asking her to send Grubbs a letter for him (letter included in Exhibit 10 as 13 RR 144-154). 13 RR 143. In that letter to Grubbs, Bobbie Grubbs talks about making it crystal clear to her "suit" that "...it is all my fault." 13 RR 144. He goes on to say that "[a]ll the crimes are my mistakes. I'll fade all the heat due. I'll take full responsibilities (sic) for em (sic) all. It is the only thing I can do. I took you by gunpoint, I wasn't myself. I would of (sic) killed you too." 13 RR 146. Bobbie Grubbs further states: "I'll sign any affidavit they want. It's not fair you have to pay just by having my last name. Don't stay silent. Tell the Judge to call me for a bench warrant. Do not get railroaded. Don't take any deals. None! It will prove guilt. Stay away from deals." 13 RR 146. Later, Bobbie Grubbs continues: "All I can do is yell, stomp, write, I made you do this crime. Your mental capacity and being scared for your life is why you went to the Woodlands that day . . . . All I do know is I was really mean to you and I made you go with me." 13 RR 149.

In Defendant's Exhibit Eleven (11), Bobbie Grubbs writes Grubbs, again while in the same Montgomery County Jail. 13 RR 155. He once again pleads with Grubbs to take no deals and that she will be released because she is innocent:

"On your case, don't take any deals that admits your (sic) guilty. Your (sic) not! If it goes to trial, Good! But remember my arrest. They were all going to trial, until they seen (sic) I was innocent, then it's like oh okay you can go. Remember? The same for you honey." 13 RR 157.

In Defendant's Exhibit Twelve (12), Bobbie Grubbs writes to Grubbs again, stating that she "...may have to go to Center. After I tell the truth, you'll be free." Bobbie Grubbs later attempts to persuade Grubbs that her lawyer should go talk to him: "I'm your husband. The person who done (sic) those awful things wasn't me." "Being charged and being convicted are two different things. You may be charged, but you'll never be convicted. Tell your lawyer he can come talk to me. I'll actually insist on it." 13 RR 161.

All of these hearsay statements by the co-defendant Bobbie Grubbs are sufficiently against his penal interest, self-inculpatory, and do not attempt to blame-shift from himself to Grubbs. In fact, his statements do the opposite by taking full responsibility.

Reliability is also shown when a defendant's own statement confirms the essential facts of a co-defendant's statements. *See Cruz v. New York*, 481 U.S. 186 (1987). In this case, Grubbs made a voluntary statement shortly after her arrest. This video/audio statement was shown to the jury (State's Exhibit 29), along with a transcript for the limited purpose of following along with the video/audio recording

(State's Exhibit 28).  4 RR 202-213.  Grubbs statements sufficiently corroborate the same story of Bobbie Grubbs', from the inconsequential statement of ordering pizza at the Joaquin Country Inn, to the statements that he acted, primarily, alone at the Joaquin Country Inn.  *See* State's Exhibit 28; 10 RR 76, 78, 79, 85-91.

Bobbie Grubbs testified at this trial, over warnings and admonitions of his attorney, after he was convicted of Capital Murder, among other charges, which were currently on appeal.  8 RR 14-16.  His statements from the time of the aggravated assault in Montgomery County to the Joaquin Country Inn shooting and assaults corroborate the statements of Grubbs and vice versa.  8 RR 34-48.  In dicta, the Dallas Court of Appeals did not find that minor discrepancies to be determinative when deciding corroboration and thus, admissibility.  *Lopez v. State*, 2003 WL 751809 (Tex. App – Dallas, no writ).  In this case, the statements of the co-defendants corroborate themselves.  Overwhelming corroborating statements and circumstances indicate trustworthiness and admissibility, whereas the self-incriminating character of statements stand on their own prong for admissibility.  *Walter v. State*, 267 S.W.3d 883, 899-900 (Tex. Crim. App. 2008).  In this particular case, there is no doubt as to the overwhelming nature of both prongs and it was error to exclude these statements from the jury.

These letters from Bobbie Grubbs, the recorded statement of Grubbs, and the recorded audio/video of Bobbie Grubbs in Trooper Barnes' car all corroborate each

other, along with Bobbie Grubbs' live testimony at trial. The corroboration must be sufficiently convincing to clearly indicate the trustworthiness of the statement. *Davis v. State*, 872 S.W.2d 743 (Tex. Crim. App. 1994). A trial court should consider a number of factors: (1) whether the guilt of the declarant is inconsistent with the guilt of the defendant; (2) whether declarant was so situated that he might have committed the crime; (3) the timing of the declaration; (4) the spontaneity of the declaration; (5) the relationship between the declarant and the party to whom the statement is made; and (6) the existence of independent corroborative facts. *Id.* at 749.

First of all, the guilt of Bobbie Grubbs is not inconsistent with Grubbs' guilt. The evidence at trial indicates the two were together the entire time, from the Cashdollar's home, to the Joaquin Country Inn, to the arrest in Liberty County. Secondly, Bobbie Grubbs was situated so that he might have committed the crimes he alleges. Once again, the evidence at trial indicates the two were together the entire time, from the Cashdollar's home, to the Joaquin Country Inn, to the arrest in Liberty County. Third, Bobbie Grubbs has made the same consistent statements since his arrest, through the entire pre-trial time period in letters written, and now during Deedra Grubbs' trial. Fourth, Bobbie Grubbs made these statements spontaneously. The statements made to Trooper Barnes were not in response to questioning or interrogation by the Trooper. Fifth, the letters written by Bobbie

Grubbs were written to friends and family, and even when made to Trooper Barnes, the statements were given in response to an interrogation.

Lastly, the State developed independent corroborative facts which verified the statements given and written by Bobbie Grubbs. Mrs. Cashdollar stated that Bobbie Grubbs directed Grubbs to get the guns. 4 RR 52. She stated that Bobbie Grubbs was the one that hit her coming in the door and slammed her to the ground. 4 RR 55. Trooper Rayburn stated that when looking at the records at the Joaquin Country Inn, Bobbie Grubbs had rented Room 101 on April 26, 2012. 6 RR 137. Trooper Rayburn also confirmed that was Bobbie Grubbs' car in the parking lot of the Joaquin Country Inn. 6 RR 137-138. Trooper Rayburn was also part of a group that found a gun discarded on State Highway 103, where Bobbie Grubbs told them he had thrown the gun. 6 RR 149-150. Quinton "Sam" Watts also stated that it was only Bobbie Grubbs that entered the room, waving the gun, and it was Bobbie Grubbs who fired the shots. 7 RR 93-96. These independent corroborative facts, plus the aforementioned evidence demonstrating the other *Davis* factors, indicate Bobbie Grubbs' statements were trustworthy under TEX. R. EVID. 803(24). Therefore, Defendant's Exhibit 15 was admissible under TEX. R. EVID. 803(24) (Texas Lawyer 2015).

Grubbs was prevented from providing exculpatory and mitigating evidence to the jury by and through these statements against interest made by Bobbie

Grubbs. The trial court's failure to admit these letters constitutes reversible error. For this reason, Grubbs' conviction should be overturned, and she should be granted a new trial.

**B. The trial court committed reversible error when it failed to admit hearsay statements made by Co-Defendant Bobbie Grubbs contained in a DPS trooper's in-car video/audio recording which contained exculpatory statements relating to Appellant Grubbs.**

After eliciting testimony from her expert witness in the case, Grubbs' trial counsel asked for a bench conference outside the presence of the jury. 9 RR 77. At that time, Grubbs offered Defendant's exhibits 7-12, which were letters written by Co-Defendant Bobbie Grubbs and were previously authenticated. 9 RR 78. The State objected to the letter exhibits as hearsay, specifically that the letter exhibits did not fit the exception as statements by a co-conspirator. 9 RR 78-79.

Grubbs' trial counsel quickly pointed out to the State and trial court that the letter exhibits were being offered as statements against interest also. 9 RR 79. No additional argument was made by the State. 9 RR 79. After the trial court sustained the State's hearsay objection, Grubbs' trial counsel offered the letter exhibits for appellate purposes, and also for corroboration for other hearsay statements. 9 RR 79-82. The State did not object to this offer as corroboration by Grubbs. 9 RR 79-82. Grubbs' trial counsel then offered Defendant's exhibits 15 and 16, both as corroboration of the excluded letters and as corroboration of the statements of Bobbie Grubbs and the recorded interview of Grubbs. 9 RR 80-82.

Defendant's exhibits 15 and 16 were also offered, as the letters beforehand, as statements against interest. 9 RR 80-82. Authentication of Defendant's exhibits 15 and 16 was stipulated. 9 RR 81. Both Defendant's exhibits 15 and 16 were excluded by the trial court on the State's hearsay objections. 9 RR 82. After the court sustained the State's hearsay objection and thus ending her case-in-chief, Grubbs, outside of the presence of the jury, testified under oath that she would exercise her Fifth Amendment right to remain silent and not take the witness stand. 9 RR 83-84.

In a similar argument as contained in the first issue, Grubbs only complains on appeal about the exclusion of Defendant's Exhibit 15. When a co-defendant makes an admission against interest, it is also admissible against the defendant, so long as (1) it is sufficiently against the co-defendant's own interest to be reliable, and (2) it is corroborated. *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999). Reliability is usually presumed when the declarant's statement falls under a traditional hearsay rule exception. *Ohio v. Roberts*, 448 U.S. 56, 68 (1980). However, a statement against the declarant's penal interest is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. TEX.R.EVID. 803(24) (Texas Lawyer 2015). A co-defendant's statement against penal interest is presumed unreliable, however, to the extent it inculpates a defendant. *See Lee v. Illinois*, 476 U.S. 530, 546 (1986). The rationale for this

proposition is the obvious motive of an accomplice to shift some or all of the blame away from himself. *Id.* at 545.

In the excluded audio/video, Defendant's Exhibit Fifteen (15) shows co-defendant Bobbie Grubbs, after arrest in DPS Trooper Barnes' patrol car, waiting and then travelling to the Montgomery County Jail. Bobbie Grubbs makes many statements to Trooper Barnes against his penal interest during this recording:

"She is totally blameless. I made her go to the house with me." 13 RR 166 (at approx. 14:50 minutes).

"I'm bad, she's not. I made her do everything. She didn't pull no (sic) triggers. I took her with me because she was a witness." 13 RR 166 (at approx. 15:44 minutes).

"She has done nothing wrong. I made her. I had a gun on her. And made her go to that lady's house. She didn't want to. I made her." 13 RR 166 (at approx. 18:38 minutes).

"I told her I was bringing her back, where did she want to go, and she said "Bobbie, I want you to shoot me, after what you have done today. They will blame me. And I told her, "Baby, you have done nothing wrong."" 13 RR 166 (at approx. 20:17 minutes).

"She hasn't taken it (her medicine). I wouldn't let her. She's not the problem here; it's me. I made her go with me." 13 RR 166 (at approx. 30:02 minutes).

"She is totally innocent.  I had her at gunpoint."  13 RR 166 (at approx. 1:00:37).

"I made Deedra go up to the door and I had a pistol in the back of my pants. I had her at gunpoint and told her, "I will shoot you if you don't do it."  She freaked out, so I had to take her when I ran.  I made her go with me."  13 RR 166 (at approx. 1:03:15).

"They can't fully charge her because she didn't do it, and if they do, they are wrong." 13 RR 166 (at approx. 1:05:54).

"Deedra didn't have anything to do with it.  That's why she was acting like that."  13 RR 166 (at approx. 1:25:06).

Statements made to friends, loved ones, or family members normally do not raise the same trustworthiness concerns as those made to investigating officers because there the declarant has an obvious motive to minimize his own role in a crime and shift the blame to others.  *Walter v. State*, 267 S.W.3d 883, 898 (Tex. Crim. App. 2008) (comparing to *Williamson v. United States*, 512 U.S. 594 (1994).).  In this case, these self-inculpatory statements were given to an investigating officer, in fact, while in a Texas DPS patrol car while heading to jail. There were no statements minimizing Bobbie Grubbs' role in these crimes.  And the statements made to friends, family, and loved ones contained in the letters

discussed above in Issue One, contained these same self-inculpatory statements, lending themselves to trustworthiness as well.

Further, the recorded statement of Grubbs, this recorded audio/video of Bobbie Grubbs, and the letters from Bobbie Grubbs all corroborate each other, along with Bobbie Grubbs live testimony at trial. The corroboration must be sufficiently convincing to clearly indicate the trustworthiness of the statement. *Davis v. State*, 872 S.W.2d 743 (Tex. Crim. App. 1994). A trial court should consider a number of factors: (1) whether the guilt of the declarant is inconsistent with the guilt of the defendant; (2) whether declarant was so situated that he might have committed the crime; (3) the timing of the declaration; (4) the spontaneity of the declaration; (5) the relationship between the declarant and the party to whom the statement is made; and (6) the existence of independent corroborative facts. *Id.* at 749.

First of all, the guilt of Bobbie Grubbs is not inconsistent with Grubbs' guilt. The evidence at trial indicates the two were together the entire time, from the Cashdollar's home, to the Joaquin Country Inn, to the arrest in Liberty County. Secondly, Bobbie Grubbs was situated so that he might have committed the crimes he alleges. Once again, the evidence at trial indicates the two were together the entire time, from the Cashdollar's home, to the Joaquin Country Inn, to the arrest in Liberty County. Third, Bobbie Grubbs has made the same consistent statements

since his arrest, through the entire pre-trial time period in letters written, and now during Deedra Grubbs' trial. Fourth, Bobbie Grubbs made these statements spontaneously. The statements made to Trooper Barnes were not in response to questioning or interrogation by the Trooper. Fifth, the letters written by Bobbie Grubbs were written to friends and family, and even when made to Trooper Barnes, the statements were given in response to an interrogation.

Lastly, the State developed independent corroborative facts which verified the statements given and written by Bobbie Grubbs. Mrs. Cashdollar stated that Bobbie Grubbs directed Grubbs to get the guns. 4 RR 52. She stated that Bobbie Grubbs was the one that hit her coming in the door and slammed her to the ground. 4 RR 55. Trooper Rayburn stated that when looking at the records at the Joaquin Country Inn, Bobbie Grubbs had rented Room 101 on April 26, 2012. 6 RR 137. Trooper Rayburn also confirmed that was Bobbie Grubbs' car in the parking lot of the Joaquin Country Inn. 6 RR 137-138. Trooper Rayburn was also part of a group that found a gun discarded on State Highway 103, where Bobbie Grubbs told them he had thrown the gun. 6 RR 149-150. Quinton "Sam" Watts also stated that it was only Bobbie Grubbs that entered the room, waving the gun, and it was Bobbie Grubbs who fired the shots. 7 RR 93-96. These independent corroborative facts, plus the aforementioned evidence demonstrating the other *Davis* factors, indicate Bobbie Grubbs' statements were trustworthy under TEX. R. EVID. 803(24).

Therefore, Defendant's Exhibit 15 was admissible under TEX. R. EVID. 803(24) (Texas Lawyer 2015).

For this reason, the trial court should have admitted the statements made by Bobbie Grubbs to Trooper Barnes, and its failure to do was reversible error. As such, this Court should reverse Grubbs' conviction in this case and grant her a new trial.

## CONCLUSION AND PRAYER

**WHEREFORE PREMISES CONSIDERED**, Appellant Deedra Grubbs respectfully requests that the Court: (i.) reverse the convictions in this case and grant her a new trial, and (ii.) grant to her any and all further relief to which she may be entitled.

Respectfully submitted,

THE LAW OFFICE OF JEFF ADAMS, PLLC
119 Logansport Street
Center, Texas 75935
Tel:     (936) 598-4900
Fax:     (936) 598-4905
Email:  jeff@jeffadamslaw.com


By: */s/ Jeff Adams*
**Jeffrey D. Adams**
**Texas Bar No. 24006736**
**Attorney for Deedra Grubbs**

## CERTIFICATE OF SERVICE

This is to certify that on the 3rd day of July, 2015, a true and correct copy of the above and foregoing document was served on the following in accordance with the Texas Rules of Appellate Procedure:

Mr. Kenneth Florence
Shelby County District Attorney
200 San Augustine Street
Center, Texas 75935
(936) 598-4106 (Facsimile)

*/s/ Jeff Adams*
Jeff Adams

## CERTIFICATE OF WORD COUNT COMPLIANCE

I certify that the word count of this Appellant's Brief is 5415 words. I relied on the word count function of my word processor to determine this count.

By: *   /s/ Jeff Adams*
Jeff Adams