*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ROBERT L. CHANDLER,

      Defendant-Appellant.

UNPUBLISHED
January 21, 2020

No. 344565
Ionia Circuit Court
LC No. 2017-017253-FH

Before: O'BRIEN, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of assault on a prison employee, MCL 750.197c. We affirm.

## I. FACTS

On December 26, 2016, correctional officers Cyle Perrien and Derek Miller were on duty at the Michigan Department of Corrections, Michigan Reformatory. In the performance of her duties, Officer Perrien wrote defendant a misconduct ticket and reviewed the ticket together with defendant and Officer Perrien's sergeant. While returning from lunch, defendant walked by Officer Perrien, who was seated at a desk, and called her a "lying bitch." Defendant then punched still-seated Officer Perrien in the face with a closed fist. Officer Perrien hit the ground while her colleague, Officer Miller, attempted to subdue defendant. Defendant resisted and punched Officer Miller twice in the chin. A third correctional officer, Officer Luis Adame, heard the commotion and went to assist. Officer Adame saw Officer Perrien on the floor and defendant punching Officer Miller. It took several correctional officers to subdue defendant.

Both Officers Perrien and Miller were familiar with defendant because he resided in the prison unit for which they were responsible. After the assaults, defendant wrote two apology letters, one for Officer Perrien and the other for Officer Miller. These apology letters, which expressed defendant's culpability to the assaults, were admitted into evidence without objection. On February 23, 2017, defendant again admitted to the assaults in a recorded interview with Michigan State Police Investigator Christian Clute. The prosecution entered the recording of this interview into evidence without objection and played part of the recording for the jury.

-1-

Defendant was convicted as stated, and now appeals as of right.

## II. DIRECTED VERDICT

Defendant first argues that the trial court erred by denying defendant's motion for a directed verdict because, according to defendant, the prosecution did not present sufficient evidence to establish that defendant was lawfully imprisoned. We disagree.

Defendant was convicted under MCL 750.197c. That statute requires the prosecution to prove that the defendant "(1) was lawfully imprisoned in a place of confinement; (2) used violence, threats of violence, or dangerous weapons to assault an employee of the place of confinement or other custodian; and (3) knew that the victim was an employee or custodian." *People v Neal*, 232 Mich App 801, 803; 592 NW2d 92 (1998) (*Neal I*), vacated by *People v Neal*, 233 Mich App 649; 592 NW2d 95 (1999) (*Neal II*). Defendant only argues that the prosecution failed to present sufficient evidence to establish that he was *lawfully* imprisoned at the time of the assaults at issue.

In *People v Gaines*, 223 Mich App 230, 234; 566 NW2d 35 (1997), overruled by *Neal II*, 233 Mich App 649 (1999), this Court held that evidence of a defendant's incarceration in a state prison was insufficient to prove the lawfulness of that imprisonment. In *Neal I*, a panel of this Court declared a conflict panel with *Gaines*, explaining, "Were we to consider this issue as a matter of first impression, we would conclude that a jury could reasonably infer lawful imprisonment from evidence that the defendant was incarcerated in a state prison." *Neal I*, 232 Mich App at 805. The special panel convened in *Neal II* and adopted *Neal I*'s reasoning and analysis. *Neal II*, 233 Mich App at 650. Thus, by virtue of *Neal II*, we are bound by *Neal I*'s ruling that "a jury could reasonably infer lawful imprisonment from evidence that the defendant was incarcerated in a state prison." *Neal I*, 232 Mich App at 805.

At trial, the prosecution called several correctional officers who testified about defendant's incarceration. From this, the jury could reasonably infer that defendant was lawfully imprisoned. See *id*. Defendant recognizes that, so long as *Neal II* remains good law (which it does), his argument fails. Because *Neal II* is a published decision, we are bound under the rule of stare decisis to follow its ruling. MCR 7.215(C)(2).[1]

## III. INEFFECTIVE ASSISTANCE

---

[1] We decline defendant's invitation to declare a special panel under MCR 7.215(J)(2) because we agree with *Neal II*'s ruling. But even if we did not, our Court Rules do not allow us to declare a special panel under the circumstances here. *Neal II* was the decision of a special panel, and MCR 7.215(J)(6) states, "The decision of the special panel . . . is binding on all panels of the Court of Appeals *unless reversed or modified by the Supreme Court*." (Emphasis added.) Thus, only our Supreme Court, and not a panel of this Court, may overrule or modify *Neal II*.

Next, defendant argues that he was denied the effective assistance of counsel because defense counsel failed to exclude what defendant claims were coerced, involuntary confessions. We disagree.

To demonstrate ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

Accepting (for purposes of this opinion) defendant's assertion that defense counsel should have been aware of the allegation that defendant's apology letters were coerced and therefore should have been excluded, defendant cannot establish that there is a reasonable probability that, had the letters been excluded, the outcome at trial would have been different. Besides the testimony of the officers that supported defendant's conviction, the jury saw Investigator Clute's interview with defendant during which defendant made a confession wholly separate from his apology letters. Defendant does not argue that his confession to Investigator Clute was involuntary or coerced, and this separate confession independently confirmed defendant's culpability.

Defendant argues that "introduction of a valid confession does not render the introduction of an involuntary confession harmless or non-prejudicial, because the improperly admitted confession may 'interlock' with and thus reinforce the properly admitted one—as happened here." In support of this assertion, defendant cites to *Cruz v New York*, 481 US 186, 191-192; 107 S Ct 1714; 95 L Ed 2d 162 (1987). *Cruz* does not, however, support defendant's assertion. *Cruz* dealt with confessions by codefendants, and its discussion of "interlocking" confessions was a reference to when a codefendant's confession confirmed—or " 'interlock[ed]' with"—the defendant's confession. *Id*. at 192. The *Cruz* Court explained that, in most situations, a criminal defendant will be seeking to not admit his own confession, so "[a] codefendant's confession will be relatively harmless if the incriminating story it tells is different from that which the defendant himself is alleged to have told" because such a circumstance "gives credence to the defendant's assertion that his own alleged confession was nonexistent or false." *Id*. In contrast, the *Cruz* Court reasoned that a codefendant's confession is "enormously damaging if it confirms, in all essential respects, the defendant's alleged confession." *Id*. But the Court noted this "might be otherwise if the defendant were *standing by* his confession, in which case it could be said that the codefendant's confession does no more than support the defendant's very own case." *Id*.

While *Cruz* is largely inapplicable because it deals with the effect of a codefendant's confession, we conclude that, to the extent that it is applicable, it supports that the admission of the allegedly coerced confession was not harmful to defendant. Defendant is not contesting his confession to Investigator Clute or otherwise claiming that the confession was false or coerced, so the admission of defendant's allegedly coerced confession "does no more than support the defendant's very own case." *Id.*

We note that, in his interview with Investigator Clute, defendant alleged that some of his actions were in self-defense, and there is no such mention in the apology letters. Nonetheless, we reject defendant's contention that admission of the apology letters "eliminate[d] any possibility the jury would find that he had acted in self-defense in" striking the officers.

-3-

Defendant told Investigator Clute that he was acting in self-defense only with respect to Officer Miller; he made no such claim with respect to Officer Perrien. In defendant's letter to Officer Miller, defendant wrote that "no matter how I feel I still owe you an apology" because "[y]ou got hit by me for doing your job . . . ." Thus, defendant in his letter simply admitted that he struck Officer Miller, which defendant conceded when he asserted that the striking was self-defense. The letters did not contradict or otherwise undermine defendant's self-defense claim. Because the apology letters only established facts that defendant already conceded, we conclude that there is no reasonable probability that the outcome would have been different had the letters been excluded. *Trakhtenberg*, 493 Mich at 51.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ James Robert Redford